IN THE

# SUPREME COURT

OF

# OREGON

Argued February 3, decided March 1, 1910.

## CHICK v. BRIDGES.

[107 Pac. 478.]

FRAUDS, STATUTE OF—SALE OF LAND—AUTHORITY OF AGENT.

Section 797, B. & C. Comp., provides that an agreement for the sale of real property, or any interest therein, shall be invalid if made by an agent of the party sought to be charged unless the authority of the agent is in writing. A., an attorney and timber broker, wrote to defendant B. that it was possible he could bring B. a buyer for certain timber, and asked B. to name his lowest cash price, including commission, for the land. B. replied fixing a price at $20 an acre and thereafter wrote A.: "If you make the sale of the land within 20 days from this date, I will allow you two and one-half per cent commission." On receipt of such letter, A. executed a contract of sale, which he signed as B.'s agent, contracting for conveyance of the property on the terms specified. *Held,* that the correspondence was not a sufficient authorization to entitle A. to make such contract; a writing in the nature of a power of attorney, though not required to be sealed, witnessed, or acknowledged, being required.

From Lane: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit to enforce the specific performance of an alleged contract to convey real property, and was commenced by Charles H. Chick, Constantine Morton, and Everett P. Lewis against J. T. Bridges and Belle, his

wife; but by intervention the Security Savings & Trust Company, a corporation, T. W. Harris, and L. E. Bean subsequently became parties defendant. The question to be considered is whether or not the person who subscribed the name of the owner of such land to a writing stipulating for a sale and conveyance thereof, possessed sufficient power for that purpose. The cause, being at issue, was referred, and from the testimony taken the court found that such person did not have the requisite authority and dismissed the suit, from which decree the plaintiffs appeal.                    AFFIRMED.

For appellants there was a brief with oral arguments by *Mr. J. F. Boothe* and *Mr. Lark Bilyeu.*

For respondents there was a brief over the names of *Messrs. Woodcock & Potter* and *Messrs. Williams & Bean* and *Mr. Richard W. Montague,* with oral arguments by *Mr. John Williams* and *Mr. Montague.*

Opinion by MR. CHIEF JUSTICE MOORE.

The evidence shows that John M. Rennie and others and the defendants, Harris and Bean, severally owned certain timber lands in township 17 south of range 4 east in Lane County, and, desiring so to combine their holdings as to make a purchase of the entire premises desirable and to obtain the best consideration therefor, they consummated an agreement, whereby Harris was selected to superintend the venture, to whom the various tracts of land were to be conveyed in trust, the deeds therefor to be placed in escrow; that no such grantor would thereafter transfer his interest in the premises except to a party to the agreement, without first giving thirty days' notice to the trustee of his intention to sell and of the sum of money demanded therefor, during which time Harris or any other party to the agreement might purchase the land at the price asked. The defendant Bridges, being the owner of land in the township and range noted,

together with his wife, on March 19, 1906, executed a deed of the premises to Harris in trust to sell and convey the same pursuant to the terms set forth in the trust agreement, which deed was not recorded but placed in escrow.

S. D. Allen, who resided at Eugene, wrote Bridges, who lived at Myrtle Point, July 25, 1906, as follows:

"The records show you to be the owner of four timber claims in Sections 22, 27, and 25 in township 17 south, range 4 east. If you would sell these claims, it is quite possible that I could bring you a buyer. In fact I think I know just such a man at this time. I would be very glad if you would indicate your lowest cash price, including the commission, for these lands. Anything you may say will be regarded as strictly confidential. . I do not run a real estate office and have no desire to mention the land to residents of this vicinity, but I have relations with Eastern men who might buy the land, if the price seemed right."

Three days thereafter Bridges replied in writing that he would take $20 an acre for his land. Allen, upon receiving this information, wrote that it would be difficult to obtain a purchaser who would be willing to pay that price in addition to a commission, and urged Bridges to give him 2½ per cent of the consideration demanded if a sale could be effected. In answer to the solicitation, Bridges wrote, August 12, 1906, as follows:

"If you make the sale of the land within twenty days from this date I will allow you two and one-half per cent commission."

Upon the receipt of the latter statement, a memorandum was prepared, stipulating for the sale of the land at the price indicated; that the vendor would furnish an abstract showing that he had a good title; and that he would, within ten days, execute a warranty deed to the premises, to which writing Bridges' name was signed by Allen as agent, and whereto Chick appended his signa-

ture on behalf of the plaintiffs. Bridges, having been notified of the execution of such writing, refused to make a deed to the plaintiffs; but an August 24, 1906, pursuant to the covenant of his trust deed, he and his wife conveyed the land to Harris and Bean, and the latter and their wives thereafter executed a deed of the premises to the defendant, the Security Savings & Trust Company.

The testimony shows that the letters referred to constitute the only communication between Allen and Bridges who, during such correspondence, were unacquainted with each other. Allen, as a witness for the plaintiffs, in answer to the inquiry, "What is your business?" replied, "I am an attorney and timber broker and timber agent, buying and selling timber on commission." Though this witness thus admitted that he was a broker, it is maintained by plaintiffs' counsel that Bridges had no knowledge of the nature of the business in which Allen was engaged when he was employed to sell the land; that, no limitations or restrictions having been placed on the power thereby granted, the principal's order to negotiate a sale of the premises necessarily carried with it as an incident thereto, permission to do all things proper, usual, necessary, and reasonable, to effect the object and purpose sought to be accomplished by the authority conferred; and that, such being the case, Allen was not a broker, but an agent duly empowered to execute on behalf of Bridges the memorandum which forms the basis of this suit; and hence errors were committed in rendering the decree herein, and in refusing to enforce specific performance of the agreement.

Our statute prescribing the instances in which evidence of a particular kind is considered indispensable, in so far as considered to be involved herein, is as follows:

"In the following cases the agreement is void, unless the same or some note or memorandum thereof, express-

ing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence therefore of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law; * * (6) an agreement * * for the sale of real property, or of any interest therein; (7) an agreement concerning real property, made by an agent of the party sought to be charged, unless the authority of the agent be in writing." Section 797, B. & C. Comp.

A text-writer, referring to enactments similar to the subdivision last quoted, says: "Where a writing is required, the authority to sell must be clear and explicit, and of such a character that a fair and candid person can see without hesitation that the authority is given. There is an important distinction between an authority to find a purchaser and an authority to execute a contract of sale, which is constantly recognized and applied by the courts, and specific performance has often been refused where the transaction disclosed that the agent's powers were limited to the mere finding of a purchaser." Warvelle, Vend. (2 ed.) § 203. The rule prevails in some states that, unless the statute of frauds expressly requires the authority of an agent to sign a contract stipulating for the sale of real property to be evidenced by a writing, his power to bind his principal by a memorandum may be created by parol. *Brandon* v. *Pritchett,* 126 Ga. 286 (55 S. E. 241: 7 Am. & Eng. Ann. Cas. 1093, 1102, and notes). In *Grant* v. *Ede,* 85 Cal. 418 (24 Pac. 890: 20 Am. St. Rep. 237) the owner of land wrote to a person that "we will sell" the premises within a given time for a stated consideration and pay a commission. Based on the letter, the person receiving it executed a memorandum of sale, and it was held that the authority conferred was insufficient for that purpose. To the same effect is the case of *O'Shea* v. *Rice,* 49 Neb. 893 (69 N. W. 308). The writing

demanded by our statute of frauds (Section 797, subd. 7, B. & C. Comp.) which will warrant an agent to bind his principal by a memorandum stipulating for the sale of real property, though not required to be sealed, witnessed, or acknowledged, must, in specifying the authority delegated, be more in the nature of a power of attorney, the terms of which should be strictly construed. *Gilbert* v. *How,* 45 Minn. 121 (47 N. W. 643: 22 Am. St. Rep. 724).

It will be remembered that Allen's letter of July 25, 1906, which is the foundation of the authority conferred, informs Bridges that "it is quite possible that I could bring you a buyer." From the language thus employed, it would seem reasonably to be inferred that Allen was expected to find a purchaser who was able, ready, and willing to take the land and to pay for it the consideration demanded, with whom, when produced, Bridges could effectuate a valid contract of sale. *York* v. *Nash,* 42 Or. 321 (71 Pac. 59) ; *Flegel* v. *Dowling,* 54 Or. 40 (102 Pac. 178, 180).

Believing that the authority conferred upon Allen was insufficient to enable him to execute the memorandum to plaintiff, the decree is affirmed.        AFFIRMED.