Argued May 6, decided June 3, rehearing denied July 1, 1913.

# WALK *v.* HIBBERD.

(133 Pac. 95.)

**Trial—Instructions—"Attorney"—Applicability to Evidence.**

1.   In an action by the wife of a vendor against the purchaser on an alleged promise by a third person that the purchaser would pay her a specified sum as consideration for her joining in the deed, where the only testimony to show that the third person had authority to make such contract was that he was an attorney for the purchaser, instructions that if he was authorized to represent the purchaser, and, if he made such offer, to find for plaintiff, and that, if he was the duly authorized and acting attorney for the purchaser, plaintiff was justified in dealing with the purchaser through him, and the attorney's acts and contracts would bind the purchaser, were erroneous, in view of Section 1074, L. O. L., defining an "attorney" as a person who has a right to appear for and represent a party in a written proceeding in any action, suit, or proceeding, and Section 1083, providing that an attorney has authority to bind his client in any of the proceedings in an action, suit, or proceeding by an agreement filed with the clerk or entered upon the journal of the court, and not otherwise, and to receive money or property claimed by his client in an action, suit, or proceeding, and to discharge the claim, or acknowledge satisfaction of a judgment or decree.

**Frauds, Statute of—Agreements Respecting Real Property.**

2.   Under Section 808, L. O. L., providing that an agreement concerning real property made by an agent of the party sought to be charged is void unless the agent's authority is in writing, the wife of a vendor could not enforce an agreement by the agent of the purchaser to pay her a specified sum for joining in a deed, where the agent's authority was not in writing.

    [As to what constitutes a contract for the sale of land within the meaning of the statute of frauds, see note in 102 Am. St. Rep. 230.]

From Union: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Althea G. Walk against C. R. Hibberd.

The substance of the complaint is that about October 27, 1911, this plaintiff entered into a contract and agreed with the defendant that in consideration

that the plaintiff and her husband, G. M. Walk, at the request of the defendant, would convey to him certain lands owned by the husband and in which the plaintiff had an inchoate right of dower, the defendant as part of the purchase price agreed to assume all the record liens and encumbrances against the land shown by the records of the county in which it is situated, and promised the husband and the plaintiff to pay plaintiff $3,000 and a like amount to the husband; that she and her husband conveyed the land as agreed upon; that the defendant has not paid plaintiff the sum of $3,000 or any part thereof. The answer admits the marital relation between the plaintiff and her husband, the ownership of the land by the husband, and the conveyance mentioned, but otherwise traverses the whole complaint.

The answer alleges in effect that the deed was made and delivered to the defendant by the plaintiff and her husband in pursuance of separate contracts with the grantors therein; that as to the plaintiff, she signed the deed and caused the same to be delivered to the defendant in pursuance of an agreement made between the plaintiff and the defendant whereby the latter was to pay the plaintiff $500 in cash, pay plaintiff's obligation to her attorneys in a sum not exceeding $500, and credit the sum of $2,000 upon certain notes of the plaintiff and others which the defendant held and which were secured by a mortgage upon a hotel at North Powder, Oregon; and that the defendant fully performed all of his part of the agreement last mentioned.

The reply admits that the defendant paid the attorneys of plaintiff the sum of $500 and credited $2,000 on the notes of plaintiff, but denies that she consented to or authorized the same to be done. The plaintiff also denies that the defendant paid her the

sum of $500 in any way except that he gave her a check for that amount which she has never cashed. She offered to return the check, and brought it into court for the defendant. There are other denials and allegations in the reply made by referring to lines and pages of the defendant's original answer, but these are unintelligible because that pleading is not before us. A jury trial resulted in a verdict and judgment for the plaintiff for the full amount claimed, and the defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Cochran & Cochran,* and *Mr. Leroy Lomax,* with an oral argument by *Mr. George T. Cochran.*

For respondent there was a brief over the names of *Mr. R. J. Green, Mr. Eugene Ashwill, Mr. W. E. White* and *Mr. C. A. Small,* with oral arguments by *Mr. Green* and *Mr. Ashwill.*

Mr. JUSTICE BURNETT delivered the opinion of the court.

MR. JUSTICE BEAN dissenting.

It appears in the records that the plaintiff had sued her husband for a divorce. He was the owner of a heavily encumbered farm, the property included in the deed. He also was seised of a two-thirds interest in fee in certain hotel property in North Powder, which was subject to a mortgage amounting to about $9,500. The plaintiff and her husband were makers of the note secured by that mortgage, and these notes were held by the defendant. Pending the suit for divorce both the plaintiff and her husband were desirous of settling their property affairs. They were living apart, and were not on speaking terms with

each other. She claims that in a large part her attorney of record in the divorce case managed and conducted the matter of settling the property rights between her and her husband. She claims, too, that her attorney was also the attorney for the defendant here in those transactions, and seeks to bind the latter in this action by certain declarations which she imputes to the attorney, but which both he and the defendant deny. The conveyance of the farm is admitted, and the plaintiff contends that the consideration moving to her and which she was to receive was $3,000 in cash, while the defendant maintains that the consideration inuring to her was the payment by him to her of $500 cash, payment of her liability to her attorneys amounting to $500, and a reduction of her indebtedness to himself in the sum of $2,000. It appears that the notes and mortgage on the hotel were originally given to Toy L. Young, a man of Chinese descent, who indorsed them to the defendant. One of the attorneys for the plaintiff in this action gave evidence to the effect that about October 27, 1911, the defendant, Toy L. Young, R. J. Green, and himself were together in the office of the witness, and, continuing, testified thus: "Mr. Hibberd came up there to get our consent as attorneys of Toy Young to sign some notes and continue as indorser on those hotel notes which were secured by a mortgage on the North Powder hotel, and he said that he and Mr. Cochran had been to North Powder and he had just about got a deal completed by which Mrs. Walk was turning all she had over to him, and that he was very anxious for this deal to be completed, and he said that if Toy Young did not consent to the giving of these notes as an indorser that he would simply start legal proceedings and that he was willing to do that because it would not cost him any more.

He said he had his attorneys, Cochran & Cochran, employed by the year.'' The Chinaman testified vaguely to the same conversation. The plaintiff's brother declared as a witness that prior to October, 1911, the defendant had told him that Mr. Cochran was his attorney. The plaintiff herself related a conversation which she said she had with the defendant thus: '' 'Why,' he said—I had made some allusion to Mr. Cochran—he said, 'Is he your attorney?' I says, 'Yes.' 'Oh, well, that's good,' he says, 'he is my attorney, too.' He says, 'It's good for your attorney to be my attorney,' or 'that your attorney is my attorney,' is the way he had it.'' This is all the testimony disclosed by the record in any way tending to show that Cochran was acting for Hibberd in the dealings respecting the land in question. The testimony of the plaintiff herself given with a view of charging Hibberd by the declarations of Cochran is here set down. Asked to state the conversation she had with Cochran, she said: ''He said that he had been communicating with Mr. Mount, Mr. Walk's attorney, and Mr. Walk in regard to it, and that they had agreed that, if I was willing to exempt Mr. Walk from further payment on the notes on the hotel and mortgage, they would turn the notes and mortgage; no, that if I was willing that the property should be sold, and—I don't know. My mind has been so much worked upon that at times I cannot remember. Well, he said he would have Mr. Hibberd to take the ranch at $50 an acre. I said, 'Mr. Cochran, that is very little considering how long I have stayed there and worked and gone through what I have on that ranch.' Then, after talking a little while, he says, 'Why, Mrs. Walk, you had better take $4,000.' 'No,' he said he had had a long talk with the judge, and that they had decided—well, Mr. Mount and Mr. Walk and all

had agreed that the ranch was to be sold for $50 an acre and all of Mr. Walk's indebtedness paid not exceeding $13,000, which would leave $5,000 for Mr. Walk and $5,000 for me the way he then figured the ranch, and that I—and that he would have Mr. Hibberd to take the ranch or that Mr. Hibberd was going to take the ranch at $50 an acre. 'But,' he says, 'you had better take $4,000 than go to court'; and after a while he says, 'Mrs. Walk, you had better take $3,000 than go to court'—and I believing then that Mr. Cochran, his being my attorney as well as Mr. Hibberd's and had often said he would do what was right by me, I believed that he was trying to do the best he could, and I trusted him solely. I knew nothing about law." The foregoing is all the evidence of declarations of Cochran imputed to him by the plaintiff. It may be remarked in passing that Cochran repudiates all these declarations, and defendant denies flatly that Cochran represented him in any way in the transaction.

1. On this phase of the testimony the court gave the following instructions to the jury:

"(1) I instruct you, gentlemen of the jury, that if you find from the evidence that Charles Cochran was acting as the attorney or agent of the defendant in the purchase of these lands by the defendant, and if you find from the evidence that he was authorized to represent the defendant in the negotiations for the purchase of the land described in plaintiff's complaint, and if you further find from the evidence that said C. E. Cochran, acting as the agent of said Hibberd, offered plaintiff the sum of $3,000 for her interest in the said lands, and if you further find from the evidence that the plaintiff accepted said offer, and that said offer was not revoked by defendant, and that thereafter this plaintiff, in conjunction with G. M. Walk, executed a deed to the defendant of said

lands, and, if you find that said $3,000 has never been paid for, you will find for the plaintiff in the sum of $3,000, and the interest thereon from the 29th day of April, 1912, at the rate of 6 per cent per annum.''

''(2) I instruct you, gentlemen of the jury, that if you find from the evidence in this case that the defendant, Hibberd, told the plaintiff that C. E. Cochran was his attorney, and if you find from the evidence that C. E. Cochran was the duly authorized and acting attorney of the said Hibberd in the negotiations between the plaintiff and the defendant for the purchase of the lands described in the complaint, then the plaintiff would be justified in dealing with the defendant by and through said C. E. Cochran, and the acts and contracts, if any, made by said C. E. Cochran for himself and said Hibberd would bind the defendant.''

The question to be determined is whether there was enough in this testimony upon which to predicate the instructions to the jury which have been quoted. The utmost that can be derived from the testimony on behalf of the plaintiff is that Cochran was an attorney for Hibberd. It is not pretended that Hibberd ever said that he was an agent or that he had intrusted him with the duty of negotiating the sale of the land in question. The term ''attorney'' is defined by our code thus: ''An attorney is a person authorized to appear for and represent a party, in the written proceedings in any action, suit, or proceeding, in any stage hereof'': L. O. L., § 1074. ''An attorney has authority: (1) To bind his client in any of the proceedings in an action, suit, or proceeding, by his agreement, filed with the clerk or entered upon the journal of the court, and not otherwise. (2) To receive money or property claimed by his client in an action, suit, or proceeding, during the pendency thereof, or within three years after judg-

ment or decree, and upon the payment or delivery thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment or decree'': L. O. L., § 1083. The representative capacity of an attorney is thus defined and limited by these statutes. When nothing more is shown as in this case, a party dealing with one who is only an attorney must take notice of the limitations of his authority as just defined. Under the circumstances as disclosed by the bill of exceptions the court was in error in giving license to the jury, as the instructions ·did, to impute to Cochran more authority than the statute gives him as an attorney.

The argument of the plaintiff that Cochran was the attorney of Hibberd, and hence that his representations as such attorney made to the plaintiff would bind Hibberd, proves too much; for confessedly Cochran was her attorney in the same transaction. If the rule is what plaintiff contends it is, it would work both ways. Hence, conceding Cochran, for the sake of this discussion, to have been Hibberd's attorney so that the representations of Cochran would bind Hibberd, it is equally true that the representations of Cochran as attorney for the plaintiff would bind her, with the result that as between the plaintiff and the defendant the transaction must stand as finally completed through the negotiations of the attorney. The fallacy of plaintiff's contention on this point is apparent.

2. Further, as respects Cochran, plaintiff here is trying to enforce an agreement concerning real property made by an agent of the party sought to be charged, the defendant in this instance. In other words, plaintiff contends that Cochran, as agent of the defendant, made with her an agreement concerning real property. The conditions of this contract are

now in dispute between the parties. Plaintiff asserts that the terms of payment to her were cash, while the defendant maintains that the stipulations of the contract provided for the extinguishment of some of the plaintiff's indebtedness. To prove her contention, the plaintiff must establish the terms of that agreement. It is said in Section 808, L. O. L., that "in the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law: * * (7) An agreement concerning real property, made by an agent of the party sought to be charged, unless the authority of the agent be in writing. * * " There is no pretense that Cochran had any written authority whatever from the defendant to act for him, and for this reason, likewise, the court erred in submitting the question of Cochran's agency to the jury.

The judgment of the Circuit Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.          REVERSED.

MR. JUSTICE BEAN dissents.