Argued December 11, 1935; modified January 7, 1936

UNION CENTRAL LIFE INSURANCE CO. *v.*
TOLIVER ET AL.
(52 P. (2d) 1129)

*Philip Hammond,* of Oregon City, for appellant.
*O. D. Eby,* of Oregon City, for respondents.

■ BEAN, J. The burden was upon defendants to prove the affirmative allegations of their answers. They have failed to make such proof or to show that there was an agreement by plaintiff for a partial release of the mortgage as to tracts 8 and 9.

It appears that prior to the sale of the land to Hume, I. M. Toliver was ill and unable to look after his business, and he called upon his friend, W. W. Everhart, to look after the matter for him and endeavor to make a sale of tracts 8 and 9 to Dr. Hume. Toliver, it is stated, had been a client of Philip Hammond for several years, and after Everhart made a tentative agreement with Dr. Hume for the sale of tracts 8 and 9 Everhart went to the office of Mr. Hammond to have a contract drawn. Mr. Everhart testified:

"Court: How did Mr. Hammond happen to draw that contract between Toliver and Hume?

A. He was dealing with Mr. Toliver. Mr. Toliver was not able to appear—he was very sick—so he had me take his place, and I naturally went to his office, because he was dealing with Mr. Toliver.''

Hume paid $500 to Everhart on the contract. Everhart also testified:

''A. The Hume land, in order to get the five hundred dollar payment on the land it was a question of whether we could get—it seems as though the security might be reduced, and Mr. Hammond thought it, and *he figured he could get by with the company*. [Italics ours.] So we proceeded to close the deal on that basis. This tract 8 and 9 was not very desirable piece of land. In other words, it lay way back from the end of the place, and was wet, and quite a bit of brush on it, and stumps, and the price of the land was considered a very good price for the land. * * * Seventy-five dollars an acre, which was considered an extra good price for it.''

In answer to the question as to what Hammond meant when he said he could get by with the company, Mr. Everhart said:

''A. They would be willing to give a release for the price of fifteen hundred dollars, and release Tracts 8 and 9 to Dr. Hume.

Q. Well, now, I don't want to ask a direct question, but that is what you intended to do, or not?

A. That is what we intended to do. That is what we intended to do as far as I was concerned, and Mr. Toliver intended to do. I think it was fully understood in all cases. I didn't figure on anybody being criticized, or putting anybody in the hole. It was a matter of clean business, and we all understood it clear through; * * *''

The language of Mr. Hammond, as testified to by Mr. Everhart that ''he figured he could get by with the company'', seems to indicate that Hammond would make the application for the release. It does not take

the form or substance of a promise to give a release. Everhart had no good reason to consider the statement of Hammond as an agreement to make a release. Mr. Hammond testified that he was not at that time either attorney or agent for the Union Central Life Insurance Company, and that he was not its attorney until the time he filed a complaint in the foreclosure suit. There is no substantial proof in the record to the contrary. He had worked with or for John .F. Kaufman and Sons of Portland, financial correspondents of the Union Central Life Insurance Company. The testimony of Everhart indicates that he went to Hammond's office to have the contract with Hume prepared for the reason that Hammond had been Toliver's attorney.

Defendants submit the following questions:

"1. Was Philip Hammond the attorney and agent of plaintiff corporation on March 12, 1932, at the time the contract of sale covering Lots 8 and 9, Toliver Acres, was executed and delivered?

2. Did he act for and on behalf of plaintiff as attorney and agent in preparing said contract of sale?

3. Did he agree with W. W. Everhart, then representing Toliver and Hume, that upon the payment by Hume of $1500.00 as provided in said contract, and the keeping of the terms and conditions thereof by Hume that plaintiff would accept said sum, credit it upon the Toliver notes, and that plaintiff would release its mortgage on said lots?"

■ Concerning an attorney's authority, we find the language of the late Justice BURNETT in the case of *Walk v. Hibberd,* 65 Or. 497, 503 (133 P. 95), as follows:

"The term 'attorney' is defined by our code thus: 'An attorney is a person authorized to appear for and represent a party, in the written proceedings in any action, suit, or proceeding, in any stage hereof': L. O. L. § 1074 [§ 32-101, Or. Code, 1930]. 'An attorney has

authority: (1) To bind his client in any of the proceedings in an action, suit, or proceeding, by his agreement, filed with the clerk or entered upon the journal of the court, and not otherwise. (2) To receive money or property claimed by his client in an action, suit, or proceeding, during the pendency thereof, or within three years after judgment or decree, and upon the payment or delivery thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment or decree': L. O. L. § 1083 [§ 32-202, Or. Code 1930]. The representative capacity of an attorney is thus defined and limited by these statutes. When nothing more is shown as in this case, a party dealing with one who is only an attorney must take notice of the limitations of his authority as just defined.   *   *   *''

In *Welch v. Johnson*, 93 Or. 591, 607 (183 P. 776, 184 P. 280), we read:

''In the absence of any pending litigation in which Johns was appearing as the attorney of record for Welch, no more importance can be attached to the letter than to the declaration of anyone else who assumes to speak for another. The case is not affected by the fact that the writer was a member of the Bar. He might as well have been the plaintiff's grocer or laundryman. It would be necessary to show that the declarations in the letter were authorized by the plaintiff and within the scope of the authority conferred upon the writer, before the writing could bind the plaintiff. How far an attorney may bind his client in compromise or renunciation of his claim, is discussed in Pomeroy v. Prescott, 106 Me. 401 (76 Atl. 898, 138 Am. St. Rep. 347, 21 Ann. Cas. 574, and note).'' See *Toomey v. Casey,* 72 Or. 290, 295 (142 P. 621).

Defendant Hume pleads and defendants attempt to prove that:

''with the understanding and agreement between plaintiff and the said I. M. Toliver and this defendant that upon the payment of the balance of the purchase price

thereof, to-wit: the sum of $1000.00 with interest and the compliance of defendant with all of the terms and conditions of said contract that plaintiff would accept the same and credit the same on plaintiff's mortgage and release said mortgage as to the said Tracts 8 and 9 of Toliver Acres and that defendant might receive a deed therefor from the said I. M. Toliver and Mary Toliver, his wife, free and clear of said mortgage.''

■ In other words, defendants are trying to enforce an alleged agreement concerning real property asserted to have been made by an agent of the plaintiff, the party sought to be charged. The agreement between Toliver and Hume for the sale and purchase of the land was in writing, but the alleged agreement upon the part of Hume and Union Central Life Insurance Company was not in writing, and it is not claimed to have been in writing; neither was the authority of the alleged agent in writing. To prove their contention the defendants must prove the alleged agreement as provided by sections 9-905 and 9-909, subd. 6 and 7. The alleged agreement is not established by any competent evidence. Section 9-909, Oregon Code 1930, provides:

''In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law:

\* \* \* \* \*

6. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein;

7. An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent be in writing; \* \* \*''

27 C. J. 218, § 200.

There is no contention in the present case that Philip Hammond was authorized in writing to make any arrangement for the releasing of plaintiff's mortgage on tracts 8 and 9. Section 54-109, Oregon Code 1930, provides as follows:

"No mortgage upon real estate in any county in this state shall be satisfied or released so as to free said property from the lien of said mortgage, except by the person appearing upon the records of the county where said mortgage is recorded to be the owner thereof, and a satisfaction or release of said mortgage by the party appearing upon said record to be the owner and holder of said mortgage shall operate to free the land described in such mortgage from the lien of such mortgage, so far as regards all subsequent purchasers and incumbrances for value, and without notice."

■ Defendants Toliver were charged with notice printed on each of the twenty-one notes which they signed, as follows:

"No agent is authorized to make any contract, verbal or written, differing from that written and printed on the face of this note and the instrument securing it; nor is an agent permitted to collect any part or whole of it unless endorsed to him for collection by an officer of the Company."

Mr. Everhart, who attended to the transaction, testified in regard to the $500 that the money was paid to Mr. Hammond "in his office to take care of this note. Also the taxes up to date. And other expenses regarding this transaction. Then after it was satisfied with all these payments made, there was a small balance left, and that was turned over to Mr. Toliver, and a receipt to Mr. Hammond".

It is quite significant that the $1,500 was not all paid or tendered to plaintiff. A portion of the first $500 paid was applied on the 1932 note and a portion

on the taxes and expenses, and a small balance was paid to I. M. Toliver, although it is claimed that the $1,500 was the consideration for the release of the Hume tracts.

It does not appear that defendant Hume relied upon any conversation with Mr. Hammond in regard to the release. He testified at that time that he did not know Mr. Hammond and did not see him. He states, evidently referring to the contract for the sale of the tract: "I got a paper stating I would get a clear title to the land on or before five years." It is inconceivable that an insurance company, in 1932, would agree to release a mortgage on payment of an amount less than the average amount loaned per acre five years after that date. There is no testimony in the record that the Union Central Life Insurance Company ever assented to the Toliver-Hume contract or approved or ratified the same in any way. The evidence does not disclose that the plaintiff ever had knowledge of the fact that Hume paid the $500 on the contract, of which the plaintiff received $381.49, in payment of the 1932 Toliver note. There is no evidence that the plaintiff, in 1932, held out Hammond as its agent or induced either of defendants to believe that Hammond was authorized to make a contract to release a portion of plaintiff's mortgage, but the testimony is to the contrary.

About September 4, 1934, the plaintiff paid the delinquent taxes on the land according to the terms of the mortgage in the sum of $485.93.

Dr. F. E. Hume testified that after he made the contract to purchase the land he cleared the same, tiled the land, set out nut trees and improved the same to the extent of more than $3,000.

The plaintiff should first sell the land included in the mortgage, other than the tracts 8 and 9 sold to

Hume, to satisfy the mortgage, and the proceeds of the sale of tracts 8 and 9, if any there be in excess of plaintiff's claim, should be paid to F. E. Hume.

The decree of the lower court should be modified and the cause will be remanded with direction to enter a decree foreclosing plaintiffs mortgage on all of the land embraced therein, except the two tracts which were released from the mortgage, in accordance with this opinion. It is so ordered.

RAND and BAILEY, JJ., concur.

CAMPBELL, C. J., dissents.