Argued March 20, affirmed July 3, 1957

HAGE ET UX *v.* HARVEY ET AL

313 P. 2d 448

*W. C. Winslow,* Salem, argued the cause and filed briefs for appellants.

*George A. Rhoten,* Salem, argued the cause for respondent Lawrence A. Harvey. On the brief was Sam F. Speerstra, Salem.

No appearance for respondent Salem Title Company.

Before LUSK, Presiding Justice, WARNER and KESTER, Justices.

WARNER, J.

This is a suit for specific performance of a contract made between the plaintiff-appellants and defendant-respondent Harvey. From an adverse decree the plaintiffs appeal.

The defendant Salem Title Company by a cross-complaint interpleaded and tendered into court the $10,000 later referred to as a deposit in escrow and prayed for a decree respecting the ownership of the fund as between the plaintiffs and the defendant Harvey.

On the twenty-ninth day of May, 1953, the plaintiffs for a consideration of $100 executed and delivered to the defendant Harvey an instrument giving him an option for one year in which to purchase for $10,000 a ten-acre tract of land near Silverton, Oregon, together with certain water rights and easements, for use as a site for a television transmitter station.

Shortly after and on the eleventh day of June, 1953, Mr. George A. Rhoten, a Salem attorney, in his capacity as one of counsel for Mr. Harvey, wrote the Hages concerning the transaction. This letter read:

"Dear Mr. and Mrs. Hage:

"Mr. Lawrence A. Harvey has sent us his check for $10,000 so that we are in a position to close the property purchase through as escrow arrangement with Salem Title Co. There are some things, however, that must be cleared. They are as follows:

"(1) The general counsel for Mr. Harvey must approve the papers;

"(2) The transaction must be contingent upon the approval of the Federal Communications Commission;

"(3) It must also be approved by the Civil Aeronautics Authority;

"(4) The water rights must be cleared.

"Undoubtedly, no one other than you people have any filings to the water rights to the springs but in looking over the Boatright drawing, I find that the springs aren't located and I am satisfied that before the State Engineer can approve the water right setup, we will have to have a diagram locating the springs.

"In the meantime, so that the matter will not be delayed, it would be in order for you to sign a deed and place it in escrow with the Salem Title Company with the understanding that as soon as these clearances are completed, the money can be paid you and the deed delivered. If this plan seems satisfactory, we will go ahead and draw the deed and give it to the Title Company for signing together with the escrow papers and you can call at the Salem Title Company concerning it.

"Yours truly,
RHOTEN, RHOTEN & SPEERSTRA
By /s/ Geo Rhoten"

On the same day, Mr. Rhoten wrote another letter to the Salem Title Company, enclosing a proposed deed for signature of Mr. and Mrs. Hage. This letter also informed the title company that he held "Mr. Harvey's

check for $10,000 which represents the purchase price and which will be deposited following the signing of the deed." The letter also informs the title company how the escrow and incidental charges were to be borne between the Hages and Harvey. This is followed by an itemization of the contingencies and other delaying matters found in Rhoten's letter to Hage. A copy of letter to the title company was also sent to the Hages.

The Hages, on June fifteenth, signed the deed and a document denominated "Grantor (s) Escrow Instructions." Both were left with the title company.

Sometime in early August the check for $10,000 referred to in the Rhoten letters was delivered to the title company. The check, dated June eighth and payable to the Salem Title Company, bore a notation on its face which read: "To be used per escrow instructions signed by me" followed by the signature of "L. A. Harvey."

We observe that no escrow instructions were ever signed by Harvey, nor do we believe an escrow agreement was ever accomplished as between the Hages, Harvey and the title company as a tripartite arrangement as discussed in *Moore Mill & Lumber v. Curry County Bank,* 200 Or 558, 565 et seq, 267 P2d 202. But whether such a result was achieved or not has no bearing on our final conclusion. The same is true concerning the notation appearing on the face of Mr. Harvey's check. This has interest only as one of several other items indicating the limited scope of Mr. Rhoten's authority in the option matter.

The defendant Harvey denied signing any escrow instructions or exercising his right of option to purchase the Hage property.

The plaintiffs assert that there has been both an express and implied exercise of the option. In coming to this conclusion, they rely heavily upon the Rhoten letters of June eleventh to the Hages and to the title company. Indeed, unless it can be said that these letters evidence an exercise of the option to purchase or even a counteroffer to the right conferred by the option, then plaintiffs' appeal must collapse because the letters constitute the very cornerstone upon which plaintiffs rest their case.

■■ The rule, generally speaking, is: A person is not liable on a contract executed by another in his behalf, unless he previously authorized or subsequently ratified the act. *Hinton v. Roethler,* 90 Or 440, 449, 177 P 59; *Boise-Payette Lumber Co. v. Dominican Sisters,* 102 Or 314, 326, 202 P 554. But if the agent executes an agreement for his principal which concerns real property, then the evidence of such authority must be in writing.

Even if we accept, which we do not, plaintiffs' argument that the letters signed by Mr. Rhoten evidenced an exercise of the option to purchase, or perhaps evidenced the making of a counteroffer which was later accepted by the Hages, as disclosed by the deposit of their deed with the title company, we are still confronted with a quest for proper evidence of Mr. Rhoten's authority to exercise in behalf of Mr. Harvey either his right to purchase the Hage land under the option or to make a counteroffer to purchase the same. Both relate to agreements concerning real property, and, therefore, the evidence of Mr. Rhoten's agency in either event falls within the purview of the statute of frauds (ORS 41.580 (6)).

■ The relationship of attorney and client does not in and of itself create authority to buy, sell or make any

contracts concerning real property unless expressly conferred by the client upon the attorney and to be effective must be in writing. *Toomey v. Casey,* 72 Or 290, 295, 142 P 621; *Walk v. Hibberd,* 65 Or 497, 503, 133 P 95; *Welch v. Johnson,* 93 Or 591, 607, 183 P 776, 184 P 280; *Union Central Life Ins. Co. v. Toliver,* 152 Or 185, 191, 52 P2d 1129.

■ There is no evidence in the record, written or otherwise, conferring authority upon Mr. Rhoten to exercise the option in behalf of Mr. Harvey to purchase or make any counteroffers to purchase the Hage property. Nor is there any evidence that Mr. Harvey in any way afterwards ratified what plaintiffs claim Mr. Rhoten did in Mr. Harvey's behalf.

Affirmed.