Argued and submitted October 19, affirmed
December 24, 1979, reconsideration denied March 20,
petition for review denied May 13, 1980 (289 Or 107)

# COLEMAN, et ux,
### *Appellants,*
*v.*
# PARRY CENTER FOR CHILDREN,
### *Respondent.*

## (No. 22943, CA 13959)

604 P2d 424

Sam Kyle, Albany, argued the cause for appellants. With him on the briefs were Donald V. McCallum, P.C., Bend, and Emmons, Kyle, Kropp & Kryger, Albany.

James N. Westwood, Portland, argued the cause for respondent. With him on the brief were Clifford N. Carlsen, Jr. and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

This is a suit for specific performance of a real property sales contract. The plaintiffs appeal from a decree in favor of defendant.

The case was submitted to the court on stipulated facts. On September 2, 1977, the plaintiffs as purchasers offered, in an earnest money agreement, to purchase on contract certain real property held by defendant sellers. In a letter response defendant counteroffered by making the agreement subject to several conditions, one of which was a certain release provision. This letter included the following notice:

> "The terms and conditions of any final agreement between the Parry Center and the Colemans are subject to final approval by the Board of Trustees for the Parry Center for Children. When we reach agreement as to all of the applicable terms and conditions, the proposal will be presented to a Board of Trustees meeting for such approval."

The plaintiffs failed to take action on the specified conditions, and on November 1, 1977, the counteroffer was withdrawn. Following termination of the earnest money agreement, the plaintiffs' attorney contacted defendant's attorney and reopened negotiations. The defendant was unaware of this development. On November 10, 1977, defendant's attorney prepared a second draft agreement for the sale of the property, without the authority of defendant, and submitted it to plaintiffs' attorney. This draft revised substantially the lot release provision of the earlier proposal.[1] It was accompanied by a letter from defendant's attorney which indicated that no agreement would be final until approval by the defendant's Board of Trustees.

At the November 17, 1977, meeting of the Board the attorney, who was also a member of defendant's Board of Directors, reported that the plaintiffs were

---

[1] This paragraph concerned the manner in which parcels of the real property were to be released from the security interest of the seller upon periodic contract installment payments by the buyer.

[777]

now anxious to proceed with the purchase. He moved that the Board accept the offer but the Board was concerned about accepting any agreement without having the written contract before it. The attorney then made a motion, which was passed, that the Board accept the plaintiffs' offer, "based on the strict terms of the original (September) contract." The attorney then advised plaintiffs that the Board had confirmed the sale according to the November draft. That was inconsistent with the Board's action. The plaintiffs executed the November draft, returned it to the attorney with a down payment, and an escrow was set up. The Board did not consider or accept the November draft. On December 13, 1977, the plaintiffs contacted defendant's new attorney and offered to conform the November draft to the September agreement. The Board rejected this modified offer. Plaintiffs filed suit.

It is plaintiffs' theory that defendant's attorney was acting as an agent and that defendant gave him the authority to bind it to the land sales contract. The defendant argues that in accepting the November draft the attorney acted beyond his authority and that the plaintiffs were aware that the attorney's authority was limited to the presentation of offers to the Board. In addition, defendant argues that any agreement would be void because it violated the statute of frauds, ORS 41.580.

The statute of frauds disposes of this matter. ORS 41.580 reads in pertinent part:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; * * *
"* * * * *

"(5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein.
"(6) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing.
"* * * * *."

The requirement that an agent's authority to bind its principal in contracts concerning land be in writing has been a part of the Oregon statute of frauds since its inception. 1862 Deady's Code, ch 9, § 775(7). It has been consistently construed to void agreements that do not conform. *Hage et ux v. Harvey et al*, 210 Or 652, 656-57, 313 P2d 448 (1957); *Marshall v. Strauss*, 160 Or 265, 274, 84 P2d 502 (1938); *Union Cent. Life Ins. Co. v. Toliver*, 152 Or 185, 193, 52 P2d 1129 (1936); *Ramsey v. Wellington Co.*, 114 Or 355, 369, 235 P 297 (1925); *Bessler v. Derby*, 80 Or 513, 519, 157 P 791 (1916); *Toomey v. Casey*, 72 Or 290, 295, 142 P 621 (1914); *Walk v. Hibberd*, 65 Or 497, 504-05, 133 P 95 (1913); *Chick v. Bridges*, 56 Or 1, 107 P 478, AC' 12B 1293 (1910). *See Kallstrom v. O'Callaghan*, 259 Or 210, 227, 485 P2d 1200 (1971); *Johnson v. Davis*, 252 Or 472, 475, 450 P2d 758 (1969).

In this instance the Board and the attorney expressly informed the plaintiffs of the attorney's limited authority. The minutes of the November 17, 1977, Board meeting indicate that the Board passed a motion that it accept the offer in the strict terms of the original agreement. It knew nothing of the revised draft. Even if this signed memorandum of the meeting could be construed to vest the attorney with additional power, such power would extend only to accepting, on behalf of the Board, the September agreement in its strict terms and not to offering the November draft in its stead. By the Board's own terms any deviation from the original agreement was unacceptable.

Where a writing is required under ORS 41.580(6), it must be explicit and of such a character that it clearly specifies the authority delegated to the agent. *Chick v. Bridges, supra; Marshall v. Strauss, supra.* While the statute of frauds was not designed to shield against the perpetration of a fraud, *Young v. Neill et al.*, 190 Or 161, 166, 220 P2d 89, 225 P2d 66 (1950), a party is bound at its peril to ascertain the extent of an agent's authority. *Bessler v. Derby, supra.*

Affirmed.