**CAPITAL DEVELOPMENT COMPANY, Plaintiff–Appellant,**

v.

**PORT OF ASTORIA, Defendant–Appellee.**

**No. 95–35863.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1997.

Opinion Filed Feb. 28, 1997.

Opinion Withdrawn March 11, 1997.

Decided March 11, 1997.

---

A. Gregory McKenzie, West Linn, Oregon, for plaintiff-appellant Capital Development Company.

E. Andrew Jordan with Tarlow, Jordan and Schrader, Portland, Oregon and Heather Reynolds, Astoria, Oregon, for defendant-appellee Port of Astoria.

Before: ALDISERT,* PREGERSON, and THOMAS, Circuit Judges.

## ORDER

The Opinion filed February 28, 1997 is withdrawn.

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by

## OPINION

PREGERSON, Circuit Judge:

Appellant Capital Development ("Capital") appeals the district court's grant of summary judgment in favor of Appellee Port of Astoria (the "Port"). The district court held that when Assistant Port Director R.L. Miller signed a purported lease, he acted without written authorization, and the transaction did not comply with the Oregon Statute of Frauds.

We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## BACKGROUND

The Port of Astoria is a municipal corporation, organized and existing under Chapter 777 of the Oregon Revised Statutes. The Port is governed by a Board of five Commissioners ("Board"), one of whom is the president.

In 1988, Capital and the Port started to negotiate a lease concerning roughly twenty acres of the Port's land, to be developed into a retail outlet mall. In 1989, the Port hired R.L. Miller as the Port's Assistant Director. As part of his duties Miller signed commercial real estate leases on the Port's behalf. Miller negotiated on behalf of the Port with Capital regarding the lease of the twenty acres.

In June 1990, Miller presented an outline of a proposed lease to the Board. This outline provided for the lease of fifteen to twenty acres, with a term of ten years and four renewable ten-year options. The Board unanimously approved the proposed lease, "subject to attorney approval and final commission review."

In July 1990, the Port's attorney, Heather Reynolds, reviewed a draft of the lease and then proposed additional terms. Miller and

designation.

Capital continued to negotiate after Reynolds's review. In October and December of 1990, Miller presented proposed revisions of the lease to the Board.

In November or December 1990, Miller gave each of the Port Commissioners a final draft of the lease. Miller spoke privately with three of the five Commissioners. Each of the three Commissioners separately told Miller to sign the lease. In December 1990, Miller, "on behalf of the Port," and Capital signed the lease. The five Commissioners did not meet publicly as a Board to give written authorization to Miller to sign the lease on the Port's behalf.

On March 16, 1994, Attorney Reynolds wrote a letter to Capital explaining that she believed that the lease was invalid and unenforceable because Miller had no written authorization to execute the lease as required by the Oregon Statute of Frauds, Oregon Revised Statutes 41.580(1)(f).

In September 1994, Capital initiated an action in federal district court. Capital requested specific performance of the purported lease, damages for breach of the lease, and a declaratory judgment that the lease was valid and enforceable. The Port counterclaimed, requesting a declaratory judgment that the lease was invalid and unenforceable. The Port and Capital then filed cross motions for summary judgment.

The district court granted the Port's motion and denied Capital's motion for summary judgment. The court found that the lease was "void" because it did not satisfy the requirements of Oregon's Statute of Frauds.

## DISCUSSION

We review de novo the district court's grant of summary judgment. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). We review the district court's determination of state law de novo. *Huey v. Honeywell, Inc.,* 82 F.3d 327, 329 (9th Cir.1996) (citing *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)). When reviewing summary judgment granted by a district court exercising diversity jurisdiction, we are required to "[v]iew[ ] the evidence in the light most favorable to the nonmoving party, ... [to] determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant [state] substantive law." *General Motors Corp. v. Doupnik,* 1 F.3d 862, 864 (9th Cir.1993) (citation omitted).

### 1. Oregon's Statute of Frauds' Requirements and the Wall Dicta

The Port challenges the validity of the lease. The Port argues that because Miller acted without the written authorization of the Commissioners acting as a board, the lease does not satisfy the requirements of Oregon's Statute of Frauds.

Oregon Revised Statutes 41.580(1)—the Statute of Frauds—reads in part:

> In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party ...

> (f) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing.

The district court found that when Miller signed the lease with Capital he had no written authority. The district court held that the lease therefore did not comport with the requirements of the Oregon Statute of Frauds, and was thus void or voidable and unenforceable.

Capital argues that the district court misinterpreted Oregon law, and directs us to *Wall v. S.E.C. Co.,* 270 Or. 553, 528 P.2d 1054 (1974). In *Wall,* the Oregon Supreme Court

observed in dicta[1] found in a footnote: "[I]t would appear that ORS 41.580(6)[2] was intended to apply primarily to sales or leases of property by independent real estate agents or brokers, rather than to sales or leases of property by a corporation, acting through its own employees." *Id.* (citations omitted).[3] Capital urges us to embrace the dicta's differentiation between an independent agent and an employee and hold that Miller, the Port's employee, did not need written authority to sign the lease.

The Oregon Supreme Court has not made an authoritative determination on whether the requirements of the Statute of Frauds apply to employees of a municipal corporation. Our job is to determine how that court would decide the precise issue now before us. We were faced with a similar problem in *Henkin v. Northrop Corp.*, 921 F.2d 864 (9th Cir.1990). In *Henkin*, the California Supreme Court addressed a central issue in dicta, but not in an authoritative holding. *Id.* at 867. We observed that "[w]hen a decision turns upon applicable state law, and the highest state court has not adjudicated the issue, this Court must determine what decision the highest court would reach if faced with the issue." *Id.* (citations omitted). We concluded that "[d]icta from the highest court in the state, while not controlling, is relevant to this inquiry." *Id.* (citations omitted). Moreover, we recently explained that "[w]here a state's highest court has not decided a legal issue, we must use our best judgment to predict

how that court would decide it." *Allen v. City of Los Angeles*, 92 F.3d 842, 847 (9th Cir.1996) (citation omitted).

We must accordingly survey Oregon case law arising after *Wall* to predict how the Oregon Supreme Court would today resolve the issue of the coverage of employees under the Statute of Frauds.

### 2. Oregon Supreme Court Jurisprudence After Wall

■ We first turn to Oregon Supreme Court cases decided after *Wall* to predict how the Oregon Supreme Court would resolve the issue today. In *Stone–Fox, Inc. v. Vandehey Dev. Co.*, one joint venturer executed an agreement for the sale of land, without the written authorization of the other joint venturer. 290 Or. 779, 626 P.2d 1365, 1366–67 (1981). The Oregon Supreme Court first held that the joint venture was governed by partnership law, and then confronted a tension between partnership law and the Oregon Statute of Frauds. *Id.* 626 P.2d at 1369–70. Oregon partnership law allowed a partner to act without written authority, while the Oregon Statute of Frauds required written authorization for the sale of land. *Id.*

The Oregon Supreme Court concluded that the joint venturer who had sold the land had acted outside of the apparent or usual scope of the joint venture. *Id.* at 1372. The agreement was therefore subject to the Statute of Frauds. Because the joint venturer had acted without written authorization, the court

---

1. This language is dicta because, in the same footnote, the Oregon Supreme Court held that part performance of the contract at issue removed it from the Statute of Frauds. *Wall*, 528 P.2d at 1059 n. 4.

2. ORS 41.580(6) is an earlier version of ORS 41.580(1)(f).

3. The dicta in the *Wall* footnote differentiates between real estate agents and employees for Statute of Frauds purposes. While the four cases cited in *Wall* in support of this differentiation generally relate to real estate agents or brokers, the cases do not preclude the Statute of Frauds from applying to a corporation acting through its employees. *See Kallstrom v. O'Callaghan*, 259

Or. 210, 485 P.2d 1200, 1207 (1971) (holding that a real estate broker with written authorization had authority to act as an agent); *Johnson v. Davis*, 252 Or. 472, 450 P.2d 758, 759 (1969) (holding that under the Statute of Frauds a real estate agent's authority must be in writing); *Kneeland v. Shroyer*, 214 Or. 67, 328 P.2d 753, 763 (1958) (holding that ORS 41.580(6) did not apply to an agreement concerning the payment of an agent's commission when the commission was contingent on the purchase of real property, but the agreement did not bind anyone to sell or purchase an interest in real property); *Hage v. Harvey*, 210 Or. 652, 313 P.2d 448, 450 (1957) (holding that an attorney needs written authorization for an agreement executed as an agent).

held that the land sale agreement was void. *Id.*

The court in *Stone–Fox* made no distinction between agents or brokers and employees in its Statute of Frauds analysis. In *Wall,* the dicta with which we are concerned indicated that the Statute of Frauds' written authorization requirement applied "primarily to sales or leases of property by independent real estate agents or brokers...." *Wall,* 528 P.2d at 1059 n. 4. Although the joint venturer in *Stone–Fox* was not an independent real estate agent or broker, the Oregon Supreme Court nonetheless found that the joint venturer was not taken out of the Statute of Frauds' written authorization requirement. Moreover, the Supreme Court made no mention of the *Wall* decision in arriving at this conclusion.

*Wiggins v. Barrett & Assoc., Inc.,* 295 Or. 679, 669 P.2d 1132 (1983), is another Oregon Supreme Court decision which undermines the *Wall* dicta. In *Wiggins,* plaintiffs were homeowners who received a letter from the local sanitation district. *Id.* 669 P.2d at 1135. The letter promised a free connection to a sewer line, in return for an easement across the plaintiffs' land. *Id.* Plaintiffs wanted a "gravity-flow" rather than a more-expensive "pumping" connection to the line, and contacted the sanitation district to negotiate terms. Plaintiffs first contacted the sanitation district's secretary, who referred them to Barrett, the project's engineering firm. *Id.* Barrett referred them to Gage, "their man down on the job." *Id.* Gage orally promised the gravity flow connection, the plaintiffs conveyed the easement, and it was then discovered that the depth of the sewer line required a pumping connection. *Id.* at 1135–36. Plaintiffs sued for breach of contract. *Id.* at 1136. The sanitation district argued that Gage was acting without written authority, and the easement agreement was therefore barred by the Oregon Statute of Frauds. *Id.*

The Oregon Supreme Court could have resolved *Wiggins* by applying the dicta from the *Wall* footnote and taking Gage's agreement out of the Statute of Frauds. The agreement between the engineering firm's employee, Gage, and the homeowners is more analogous to the "sale or lease of property by a corporation, acting through its own employees," than to the actions of an "independent real estate agent[ ] or broker[ ]." *Wall,* 528 P.2d at 1059 n. 4.

But, the *Wiggins* decision does not mention *Wall.* Rather, *Wiggins* assumes, without discussion, that Gage, an employee, was subject to the requirements of the Statute of Frauds, and that his agreement was taken out of the Statute of Frauds because the homeowner fully performed the oral contract's terms. 669 P.2d at 1137–38.

We see no meaningful distinction between Gage's role in *Wiggins* and Miller's role in the present case. In *Wiggins,* the sanitation district held out Gage "as an agent with whom the plaintiffs might bargain...." *Id.* at 1144. In the present case, the Port allowed Miller to bargain "on behalf" of the Port. Thus the Statute of Frauds should apply to Miller, as it did to Gage.

### 3. Oregon Appellate Court Jurisprudence After Wall

Oregon appellate court case law after *Wall* is consistent with our conclusion that Miller was subject to the Statute of Frauds. In *Coleman v. Parry Ctr. for Children,* an attorney negotiated a land contract on behalf of a non-profit corporation. 43 Or.App. 775, 604 P.2d 424, 425 (1979). Significantly, the attorney was also a member of the corporation's Board of Directors. *Id.* The Oregon court of appeals held that the attorney was subject to the requirements of the Statute of Frauds, and could not act without written authorization. *Id.* 604 P.2d at 426.

Again, the Oregon appellate court in *Coleman* made no reference to *Wall.* The role of the attorney-Board Member in *Coleman* is analogous to the role of employee-Miller in the present case. Moreover, as a member of the Board of Directors, the attorney arguably enjoyed more tacit authority than Miller. *Coleman*'s extension of the Statute of Frauds to the attorney-Board Member supports our conclusion that Miller—an employee—could not enter into an agreement concerning real property without satisfying the Statute of Frauds' requirement for written authorization.

The dicta found in the *Wall* footnote is "relevant" to our prediction of Oregon law.

*Henkin,* 921 F.2d at 867. In this case, however, the dicta is "not controlling." *Id.* Based on our analysis of Oregon Supreme Court and Oregon court of appeals jurisprudence following *Wall,* we are convinced that the Oregon Supreme Court, if squarely presented with the issue today, would subject Miller to the Statute of Frauds' written authorization requirements. The federal district court therefore correctly found that the lease, signed by the Port's agent acting without written authorization, did not comply with the requirements of ORS 41.580(1)(f) and is void and unenforceable.

### 4. The Oregon Public Meeting Requirement

█ Even if the Statute of Frauds issue did not resolve this case, we would still affirm the decision of the district court because the alleged Board "order" approving the putative lease violated Oregon's "open meeting" laws.

Capital argues that the separate approval of three of five Commissioners, acting separately, constituted a Board "order" under ORS 271.360,[4] approving the lease. This argument, if accepted, would permit land development without open public meetings and full review of the proposed transfer of an interest in land by the responsible governing public body. Oregon law does not permit so casual a course.

> Oregon Revised Statute 192.630 provides: (1) All meetings of the governing body of a public body shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by ORS 192.610 to 192.690.
> (2) *No quorum of a governing body shall meet in private* for the purpose of deciding on or deliberating toward a decision on any matter except as otherwise provided by ORS 192.610 to 192.690.

Or.Rev.Stat. § 192.630(1), (2) (emphasis added).

Oregon citizens are entitled to attend meetings of the Port Board of Commissioners at which this governing body considers a transfer of public land for private development. Because the Oregon public meeting requirement was not satisfied, the approval of three Commissioners acting separately and privately cannot constitute a valid Board "order." The district court correctly granted summary judgment for the Port.

We note, finally, that Capital assertedly embarked on an extensive commercial real estate venture for the development of public lands based on the signature of a public employee who had no written authorization by the governing public body. Before embarking on this real estate venture, Capital should have made sure that Miller's authority to act for the public governing body was in writing.

AFFIRMED.

---

**4.** ORS 271.360—"Lease Requirements"—provides: "Every lease entered into [by a political subdivision leasing real property] pursuant to ORS 271.310 shall be authorized by ordinance or *order* of the body executing the same and shall provide terms and conditions as may be fixed and determined by the governing body executing the lease . . . ." (emphasis added).