Argued November 18, 1942; affirmed March 2, 1943

# HOEVET *v.* WESTWOOD LUMBER CO.
## (Oregon Logging & Timber Co. et al., Interveners)
(134 P. (2d) 738)

424

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, ROSSMAN and BRAND, Associate Justices.

*H. T. Botts,* of Tillamook, for appellant.

*Cecil H. Greene,* of Portland (Beach, Simon & Greene, of Portland, on the brief), for respondents.

BAILEY, C. J. The question involved in this appeal is whether a certain instrument executed by the defendant Westwood Lumber Company, a corporation, and others, in favor of C. W. Barrick, trustee, intervener, is a mortgage on the real property of Westwood Lumber Company, a contract to execute a mortgage or merely an assignment of part of the purchase price, as paid, for timber on the real property mentioned and other holdings. From a decree of the circuit court declaring the trustee and his beneficiaries "to be common creditors of Westwood Lumber Company, without security or any right or claim of priority or preference" against the assets of that company, C. W. Barrick, trustee, has appealed.

This suit was instituted on May 11, 1932, by John E. DuBois, Sr., against Westwood Lumber Company for the appointment of a receiver on the ground of insolvency of that corporation, and with the consent of the company a receiver was appointed, C. R. Hoevet. Later, other parties with claims against the corporation, among them the appellant herein, were permitted to intervene. After the entry of the decree of the circuit court from which this appeal is taken, John E. DuBois, Sr., died, and upon the order of the circuit court C. R. Hoevet, administrator with the will annexed of the estate of John E. DuBois, Sr., was substituted as plain-

tiff. The administrator is not involved in the controversy before this court.

On April 9, 1931, Westwood Lumber Company owned 1,440 acres of timber land; Oregon Logging and Timber Company, a corporation, owned 4,120 acres; C. R. Hoevet, 800 acres; and Hiram W. Sibley, 360 acres; all located in Tillamook county, Oregon, and described in the complaint. The holdings of Oregon Logging and Timber Company were being purchased under contract by John E. DuBois, Jr., and C. R. Hoevet, and there remained unpaid on that contract a balance in excess of $250,000. Hoevet had a contract to purchase the Sibley land. H. T. Botts and others held a mortgage on all the land owned by Hoevet except 160 acres. And Ralph E. Williams and his wife held a mortgage on Westwood Lumber Company's timber land in the sum of $38,000.

On the date last mentioned, Westwood Lumber Company, C. R. Hoevet and his wife and John E. DuBois, Jr., as parties of the first part, Brix Logging Company, a corporation, party of the second part, and Oregon Logging and Timber Company, party of the third part, entered into a contract by which it was agreed that the parties of the first part should sell to the party of the second part all the timber lands in Tillamook county hereinabove mentioned.

The contract which we are here called upon to construe was executed on August 3, 1931. In so far as material here, it provides as follows:

"Know all men by these presents: That C. R. Hoevet, John E. DuBois, Jr., and the Westwood Lumber Company, a corporation, for and in consideration of the sum of $10.00 and other valuable considerations, to them paid, the receipt whereof is hereby acknowledged, do hereby bargain, sell,

convey, transfer and assign unto C. W. Barrick, trustee, all of the timber land and property described in that certain contract hereinafter mentioned and described with the Brix Logging Company, together with all moneys payable by the said Brix Logging Company, under the terms of said contract which was made and entered into on the 9th day of April, 1931, by and between the Westwood Lumber Company, a corporation, C. R. Hoevet and Susan Hoevet, his wife, and John E. DuBois, Jr., as the parties of the first part and designated in said contract and called 'Owners', and Brix Logging Company, a corporation, as party of the second part, designated and called in said contract 'Logging Company', and the Oregon Logging and Timber Company, a corporation, party of the third part by Virgil Crum and George M. McDowell, its receivers, designated and called in said contract 'Receivers', wherein and whereby the said Owners agreed to sell and convey unto said Brix Logging Company certain timber and timber lands located in Tillamook county, Oregon, at agreed prices, said payments for said timber under the terms of said contract being required to be made to the American National Bank of Portland, Oregon.

"It is understood that this transfer and assignment is subject to the right of the Receivers of the Oregon Logging and Timber Company to the first moneys due and payable under the terms of said contract up to the amount owing said Receivers, and that this assignment is also subject to an assignment made by the Westwood Lumber Company to Ralph Williams and wife, said assignment being incorporated in that certain mortgage recently recorded in the mortgage records for Tillamook county, Oregon, from the Westwood Lumber Company to the said Ralph Williams and wife.

"This assignment and transfer is made for the purpose of securing the payment of the sum of $82,349.28, with interest from this date at the rate

of eight per cent per annum, which the grantors and assignors herein are owing various persons, to wit: W. J. Riechers $62,699.28, C. W. Barrick $4,150.00, Geo. P. Winslow $4,150.00 and the estate of J. T. Edwards $10,350.00, all of which the assignors hereby agree to pay on or before one year from this date, and upon full payment of said amounts this assignment and transfer shall become null and void.

"The Brix Logging Company is hereby authorized and directed to make all payments under the terms of said contract to the Trustee herein until the claim of said Trustee has been fully satisfied, and the American National Bank of Portland, Oregon, is hereby authorized and directed to pay unto the Trustee herein all moneys coming into its possession under and pursuant to the terms of the contract hereinbefore mentioned and described after the indebtedness owing to the Receivers has been paid and satisfied, but subject to the right of Ralph Williams and wife to receive a part or portion of said moneys due the Westwood Lumber Company until the said claim of the said Ralph Williams and wife is satisfied.

"The said grantors and assignors herein further covenant and agree that in case the said Brix Logging Company shall fail to carry out and perform the terms, covenants and conditions of the contract hereinbefore mentioned and described and it becomes necessary for the said assignors to terminate the rights of the said Brix Logging Company under the terms of said contract on account of such failure to perform the same, that then in such event the Trustee herein named shall hold said property as mortgagee and the said assignors herein agree to execute and deliver unto the Trustee herein a mortgage upon all the right, title and interest of said assignors in and to the property which the said assignors have contracted to convey to the said Brix Logging Company, said mortgage to be executed with the usual covenants and agreements as

security for the indebtedness herein acknowledged by the said assignors.

      ❈        ❈        ❈        ❈        ❈

"It is further understood and agreed by and between all the parties that in case interest upon the obligations owing to the respective parties herein described is paid on or before the expiration of one year from this date, that time for the payment of the principal in said indebtedness will be further extended for a period of one additional year.

      ❈        ❈        ❈        ❈        ❈

"In witness whereof; the said assignors and grantors herein have caused this instrument to be duly executed".

The signatures are those of the parties designated at the beginning of the document.

The foregoing instrument was filed for record in Tillamook county on September 28, 1932, more than four and one-half months after the appointment of the receiver in this suit.

Brix Logging Company became unable to carry out the terms of its contract of purchase executed April 9, 1931. Thereupon the parties to that contract, together with Ralph E. Williams and his wife, C. W. Barrick, trustee, and others, on November 3, 1933, entered into an agreement modifying it, by the terms of which later agreement Brix Logging Company contracted to purchase the timber on the lands hereinabove mentioned. The agreement of November 3, 1933, referred to the mortgage held by Ralph E. Williams and his wife, the indebtedness of Westwood Lumber Company to Barrick, trustee, and the assignment of the contract of April 9, 1931, above mentioned. It also reserved to all parties all claims and priorities asserted,

"and all defenses which the parties had to the claims of each other, existing on the date of the original contract, to wit: April 9, 1931."

All the parties to the contract of November 3, 1933, with the exception of Brix Logging Company, on December 7, 1933, entered into an agreement specifying the manner of distributing among such parties the payments to be made by Brix Logging Company under its modified contract. C. W. Barrick, trustee, was to receive four per cent of those payments until he had received a total of $88,082.

Sometime subsequent to February 15, 1937, on a date not disclosed by the record, the parties to the agreement of November 3, 1933, except Brix Logging Company, and those to the contract of December 7, 1933, entered into an additional agreement which recited that Brix Logging Company's contract for the purchase of the timber on the lands hereinbefore referred to had been terminated, and further "provided for the distribution of the undistributed moneys paid by said logging company to the various parties and further agreed that said contracts of November 3 and December 7, 1933, with their modifications, should be and they were thereby in all respects terminated." Under the agreements hereinabove mentioned, there was paid to C. W. Barrick, trustee, and to his beneficiaries, the sum of $4,047.38.

On March 27, 1941, C. W. Barrick, trustee, filed a petition in the receivership proceeding, to have the instrument dated August 3, 1931, above quoted at length, declared a mortgage on the timber land owned by Westwood Lumber Company, or in the event that the court should hold the same not to be a mortgage, then to require the receiver of that insolvent corpora-

tion to execute a mortgage on Westwood Lumber Company's property.

The facts hereinabove set forth are those admitted by the receiver's answer to the trustee's petition and the trustee's reply to that answer. From the evidence introduced we find that on September 15, 1941, one week prior to the trial of this cause in the circuit court, Westwood Lumber Company was indebted in the sum of $573,438.39, of which amount $103,486.45 was incurred after August 3, 1931; and that the assets remaining to the corporation totaled approximately $20,000. It is also disclosed by the evidence that the indebtedness owed by Westwood Lumber Company to Barrick and his beneficiaries was so owed for more than two and one-half years prior to the execution of the contract of August 3, 1931.

The receiver introduced in evidence a copy of a petition and complaint filed October 12, 1932, in the receivership proceedings, by W. J. Riechers, C. W. Barrick, George P. Winslow and Margaret Edwards, and by them verified. In the petition it was alleged that C. R. Hoevet had for many years been the manager and in charge of the affairs of Westwood Lumber Company, and that he was not a fit, competent or suitable person to act as such receiver. The amount of the indebtedness of Westwood Lumber Company to the petitioners was also set forth therein and the court was asked to have the books and records of that company audited by a competent person. The petitioners thus stated the ground for that request.

"That the only security held by petitioners for the indebtedness herein described, except W. J. Riechers, who holds a small amount of additional security, is an assignment of a contract known as the Brix Logging Company contract with the West-

wood Lumber Company and C. R. Hoevet, et al., which assignment is subject to the rights of the receivers of the Oregon Logging Company and of Ralph E. Williams, a mortgagee, and petitioners are vitally interested in the affairs of the Westwood Lumber Company because of said indebtedness."

■ The first question for determination is whether the agreement dated August 3, 1931, hereinabove quoted, amounted to a mortgage on the real property of Westwood Lumber Company and the other real property referred to therein, or was merely an assignment of a part of the purchase price to be paid by Brix Logging Company, with a promise to execute a mortgage upon the happening of a contingency. In order to ascertain the intention of the parties to the agreement, we must look to "the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it": § 2-218, O. C. L. A.

On August 3, 1931, when the agreement was executed, Brix Logging Company had a contract to purchase from various owners 6,720 acres of timber land in Tillamook county. Of that amount Oregon Logging and Timber Company owned 4,120 acres, or in excess of sixty-one per cent of the total. Westwood Lumber Company owned only 1,440 acres, then mortgaged to Ralph E. Williams and his wife in the sum of $38,000. C. R. Hoevet owned 800 acres, the greater part of which land was mortgaged to H. T. Botts and others for $20,000.

The contract of August 3, 1931, was signed only by Westwood Lumber Company, John E. DuBois, Jr., and C. R. Hoevet. The opening paragraph of it purports to "bargain, sell, convey, transfer and assign unto C. W. Barrick, trustee, all the timber land and property described" in Brix Logging Company's contract to pur-

chase 6,720 acres, hereinabove mentioned. It further purports to assign and transfer "all moneys payable by the said Brix Logging Company, under the terms of said contract", with the exception of the "moneys due and payable" to the receivers of Oregon Logging and Timber Company on the purchase price of timber land owned by that company, amounting to about $250,000, and the further exception of an assignment made by Westwood Lumber Company to Ralph E. Williams and his wife.

Under the terms of the contract, American National Bank of Portland was authorized and directed to pay to C. W. Barrick, trustee, "all money coming into its possession" pursuant to the terms of the contract with Brix Logging Company, after payment of the indebtedness owing to the receivers of Oregon Logging and Timber Company and after Ralph E. Williams and his wife were paid money due them under the assignment of Westwood Lumber Company.

Although the contract makes the "transfer and assignment" subject to the prior claim of Oregon Logging and Timber Company and to the assignment to Ralph E. Williams and his wife, it in no wise provides that the "transfer" or "conveyance" of the timber land be subject to any mortgage thereon to Ralph E. Williams and his wife, to the mortgage on part of the land to H. T. Botts and others, or to the rights of Brix Logging Company under its contract of purchase. Inasmuch as the agreement specifically subjects to prior assignments the assignment of money to be paid Barrick as trustee, it is only reasonable to presume that, had the parties to the instrument intended it as a mortgage on the real property described in the Brix Logging Company's contract, the "transfer and assignment" would also have been made

subject to existing mortgages on all such property, and those mortgages would have been mentioned with particularity.

At the time that Westwood Lumber Company, John E. DuBois, Jr., and C. R. Hoevet executed the contract of August 3, 1931, they were not the owners of the greater part of the timber land that was being purchased under contract by Brix Logging Company. To construe the agreement as a present mortgage on all such land would impute to the signers thereof an intention to mortgage land in which they had no interest, either present or anticipated. That they did not contemplate the placing of such a construction on the agreement is apparent from a further provision therein, thus reading:

"The said grantors and assignors herein further covenant and agree that in case the said Brix Logging Company shall fail to carry out and perform the terms, covenants and conditions of the contract hereinbefore mentioned and described and it becomes necessary for the said assignors to terminate the rights of the said Brix Logging Company under the terms of said contract on account of such failure to perform the same, that then in such event the trustee herein named shall hold said property as mortgagee *and the said assignors herein agree to execute and deliver unto the trustee herein a mortgage upon all the right, title and interest of said assignors in and to the property which the said assignors have contracted to convey to the said Brix Logging Company,* said mortgage to be executed with the usual covenants and agreements as security for the indebtedness herein acknowledged by the said assignors." [Italics supplied.]

■■ In the construction of the agreement of August 3, 1931, effect must be given as far as possible to the instrument as a whole. Separate paragraphs should be

construed as integral parts of the entire instrument, and in arriving at the intention of the parties to the agreement every part thereof should be given effect, if possible. The practical construction which the parties have placed on an instrument is often an aid in determining what was their intention in executing it.

On October 12, 1932, some fourteen months after the execution of the agreement and after the receiver herein had been appointed, the beneficiaries under the trust, by their verified petition in the receivership proceeding, construed the agreement as merely an assignment to C. W. Barrick, trustee, of a part of the purchase price to be paid by Brix Logging Company for the timber land above mentioned, and not as a present mortgage on such land. Also after the receiver was appointed and after Brix Logging Company became unable to carry out its agreement of April 9, 1931, modifications were made, with the consent of the trustee, in the contract under which Brix Logging Company was purchasing the land. Not until after the Brix Logging Company's contract was terminated did the trustee, so far as the record shows, take the position that the agreement of August 3, 1931, constituted a mortgage.

■ Taking in its entirety the agreement of August 3, 1931, and considering the circumstances under which it was made, as well as the construction placed on it by the parties thereto, it is our opinion that the contract was intended as an assignment to Barrick, trustee, of a part of the purchase price to be paid by Brix Logging Company and as an agreement to execute a mortgage in the event of the failure of Brix Logging Company to perform the terms of its contract of purchase. We believe that it was not intended as a present

mortgage on the real property which was being purchased by Brix Logging Company.

It is argued by the appellant, C. W. Barrick as trustee, that even if it be held that the agreement of August 3, 1931, was not sufficient to create a legal mortgage on the real property belonging to Westwood Lumber Company, nevertheless it was sufficient as an equitable mortgage. In support of that contention it is asserted that the signers of the contract agreed to execute a mortgage, and inasmuch as equity regards as done that which ought to be done, the court should construe the instrument as an equitable mortgage.

■ It is undoubtedly the rule that an "agreement to give a mortgage or security on certain property" will be treated in equity as a mortgage, as between the parties thereto: 1 Jones on Mortgages, 8th Ed., § 226; *Robertson v. Wade,* 17 Tenn. App. 457, 68 S. W. (2d) 487; *Rutherford National Bank v. H. R. Bogle & Co.,* 114 N. J. Eq. 571, 169 A. 180. In the case last cited the principle is thus stated:

"The whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done. To dedicate property, or to agree to do so, to a particular purpose or debt, is regarded in equity as creating an equitable lien thereon in favor of him for whom such dedication is made. This wholesome equitable principle is one of wide, if not universal, recognition and application."

In the instant case the agreement of August 3, 1931, did not attempt to impress upon the real property of Westwood Lumber Company a present lien. The agreement was that a mortgage would be executed in the event of the termination of Brix Logging Company's contract.

In *White v. Barnard*, 29 F. (2d) 510, the court, in holding that an agreement to give a deed in the future as security did not create an enforceable equitable lien on the property to be conveyed, thus reasoned:

"It remains to be considered whether the agreement to give a deed of the Connecticut property as security created an equitable lien in that property which may be enforced. It does not appear that at the time this agreement was made any money was advanced. The record apparently shows that the first money advanced was in the month of June, some time after the agreement was made. Neither does it appear that it was agreed that the real estate should be held as security from the time the agreement or an advancement was made and before the deed was given. On the contrary, it appears to have been a mere agreement to give at some future time a deed of the land, and that when the deed was given the land should be held as security for advancements made prior thereto. If the agreement had been that, from the time the loans were made, the land should be held as security therefor, undoubtedly an equitable interest or lien would have arisen in Herbert's behalf when and as an advancement was made. But the facts in this case show that the agreement was not for a present right in the land, but was an agreement or promise to deed the land at some future time. This being so, no present right was created in the land at the time the agreement was made, and no such right arose until the deed was delivered in February, 1927, which was within four months of the filing of the petition in bankruptcy.

"The decisions in *Crosby v. Packer* (C. C. A.), 22 F. (2d) 611, and *Mass. Trust Co. v. MacPherson* (C. C. A.), 1 F. (2d) 769, proceed upon the theory that the agreements there under consideration created equitable interests or liens in the property, as of the time they were made; that they were not mere promises to give security in the future, as

in this case, but were agreements for a present right.''

See also, in this connection, *Mathews v. Damainville*, 100 App. Div. 311, 91 N. Y. S. 524.

The agreement of the parties herein is that in the event that Brix Logging Company's contract be terminated, the signers of the instrument of August 3, 1931, will execute a mortgage on their interest in the property described in Brix Logging Company's contract. What interest they may own in that property at that time is indefinite and uncertain, as is the amount of the indebtedness that then may be due.

■■■ At the time of the appointment of the receiver for Westwood Lumber Company, May 11, 1932, C. W. Barrick as trustee had no lien whatever, either legal or equitable, on the real property of Westwood Lumber Company. Upon the appointment of the receiver all the property of Westwood Lumber Company passed into the custody of the court for the benefit of all the creditors of the insolvent corporation: *Re Assignment of Hamilton*, 26 Or. 579, 38 P. 1088; *Home Mortgage Co. v. Sitka Spruce Pulp & Paper Co.*, 148 Or. 502, 36 P. (2d) 1038; 53 C. J., Receivers, § 118, page 95. It can be stated as a general rule that a receiver is in no sense a *bona fide* purchaser, and that he can acquire no other, greater or better interest than the debtor had in the property: 53 C. J., Receivers, § 125, page 100. It is also well settled law that a receiver takes the property subject to all valid liens against it.

■ A creditor who has no lien at the time the receiver is appointed can not after such appointment obtain a lien on the property in the receiver's hands and thereby gain a preference over other creditors entitled to share equitably in the distribution of the estate: 53 C. J.,

Receivers, § 152, page 124; *In re K-T Sandwich Shoppe,* 34 F. (2d) 962; *Lehman v. Heberle,* 9 F. Supp. 100; *Johnson v. Garner,* 233 F. 756, 776; *Hastings v. Lincoln Trust Co.,* 115 Wash. 492, 197 P. 627, 18 A. L. R. 583; *Halpern v. Clarendon Hardwood Lumber Co.,* 64 Ark. 132, 40 S. W. 784.

■ The appellant, C. W. Barrick, trustee, stands in the position of an unsecured creditor. The circuit court, therefore, did not err in holding that the agreement of August 3, 1931, did not create either a legal or equitable mortgage on the real property of Westwood Lumber Company. The decree appealed from is affirmed.

BRAND, J., dissents.