Argued February 8, affirmed April 25, petition for rehearing
denied, former opinion corrected June 6, 1956

# SMITH v. PORTLAND FEDERAL SAVINGS & LOAN ASSOCIATION ET AL

296 P. 2d 481
298 P. 2d 185

*H. H. Phillips,* argued the cause for appellants. With him on the briefs were Henry Bauer and Phillips, Coughlin, Buell & Phillips, all of Portland.

*Walter H. Evans, Jr.,* argued the cause for respondent. With him on the brief were Krause, Evans & Lindsay, and Jack L. Kennedy, all of Portland.

Before WARNER, Chief Justice, and ROSSMAN, LATOURETTE, and PERRY, Justices.

PERRY, J.

This is a suit brought by the plaintiff Winona M. Smith to establish a mortgage lien upon real property situated in Portland, Oregon.

The basis of plaintiff's claim is that in November,

1950, the defendant Eldon Mills, who then held legal title to the real property, requested of the plaintiff money to pay the balance due upon his automobile, to purchase a new automobile, and to pay off the then existing mortgage upon the real property in question, the defendant stating that upon receipt of the money he would execute a note and secure the same by executing a mortgage upon the real property; that plaintiff advanced the money in accordance with the agreement, but the defendant failed and refused to execute the note or mortgage.

Subsequently the defendant Eldon Mills transferred the real property to the defendants Jay Emmitt Mills and Wyona Mills, husband and wife, who are the brother and sister-in-law of Eldon Mills. This transfer, the plaintiff alleged, was in fraud of her rights and of the creditors of Eldon Mills.

After this suit was commenced, the defendants Jay Emmitt Mills and Wyona Mills mortgaged the real property to the defendant Portland Federal Savings and Loan Association, of Portland, Oregon, a corporation, and then subsequently conveyed the title in the premises to the defendants Gordon R. Andrus and Agatha Andrus, husband and wife.

The trial court determined the issues favorably to the plaintiff, and entered a decree that the plaintiff held an equitable mortgage upon the real property superior in right to the claims of the defendants, and ordered foreclosure of the plaintiff's mortgage.

From the adverse ruling the defendants Portland Federal Savings and Loan Association, of Portland, Oregon, a corporation, and Gordon R. Andrus and Agatha Andrus, husband and wife, alone, have appealed.

The appealing defendants admit that if the decree

is valid as against the defendant Eldon Mills, then their rights are inferior to the claimed mortgage of the plaintiff, but they contend the trial court erred in entering its decree for the following reasons:

(1) "Plaintiff is not entitled to specific performance because she failed to prove that the alleged oral agreement to give her a legal mortgage was sufficiently definite;"

(2) "because she failed to prove that the alleged agreement to give her a legal mortgage was based upon consideration and she failed to prove that her loan was in reliance on the alleged agreement;"

(3) "The conveyance from Eldon Mills to Jay Emmitt Mills and Wyona Mills was not in Fraud of Creditors and cut off whatever rights plaintiff may have had;" and

(4) "The alleged promise to give a legal mortgage was within the statute of frauds and void."

The plaintiff testified as follows:

"Q And what happened when you got down to the bank? What did you do first, do you recall?

"A Well, we figured how much we needed for him to loan him on his home and car, to pay it off, figured that on the back of a check there at the bank we got off of the First National Bank.

"Q Check or deposit slip?

"A Deposit slip then.

"Q And is that the figuring that is shown on the back of Plaintiff's Exhibit 5?

"A That is right, in his handwriting.

\* \* \* \* \*

"Q And was anything said at that time? Do you recall any specific conversation?

"A Well, we were going to go get this money and pay the car off, which was also down there, and he would give me a note on this car for what

I paid—I think it is 1200 and some dollars that he owed on that—and I asked him about it when we was over at the window paying his car off, and he told me about his note, and I said, 'Well, I should have something on this note,' and he said, 'Well, we will skip it and wait, and I will give you a note and mortgage when I pay my loan off,' and I said, 'Well, that sounds all right,' and paid the car, and went downstairs; and right directly across from this bank is this loan company, and I went with Mr. Mills and to the window, and he asked for his account, and he wanted to pay it off, and they got it, and he had to get, I think, 30 or 30 some dollars out of his billfold to pay the prorated interest that was to bring this up completely to pay it off; paid that off, and I asked him then about the note and mortgage, and he said that as soon as he got his papers back from the loan company that he would make me a note and mortgage on it; and I asked him about how long he thought that would be, and he said a week or so.

"Q Now you mentioned a note and mortgage, but you didn't say what the mortgage was to be upon.

"A The car and his home, for paying this off, protection of my money that I had loaned him.

\* \* \* \* \*

"Q (By Mr. Evans) You say that originally, November 21st, Mr. Mills told you he would give you a note and mortgage on both the car and the house?

"A He told me he would give me a note on the car in the bank, and I said, 'Well, do you want to do it now?' and he said 'Well, I will tell you. We will go over and pay the loan company off, and I will give you a note and mortgage after they send me the paper back on the whole thing, both the car and the home.'

"Q Both the home and the car were to be secured?

"A The note and mortgage was to be security for both the car and his home.

"Q I don't understand from your testimony—whether the car was to be included in the mortgage. In other words, were you to have a chattel mortgage on the car as well as a real property mortgage on the home?

"A Well, as his telling me down there, he was discussing the note for the car, and then when we went over—or he said, 'Well, I will just make it out for the whole thing when I make the note and mortgage to cover the car and my home.'

\* \* \* \* \*

"Q And now after November 21st do you recall when you had your next discussion with Mr. Mills about either a note or a mortgage or both?

"A Well, it was about a week later.

"Q Do you remember—

"A I asked him why it didn't come in, at his home.

"Q And what did he say?

"A Well, he made an excuse that he hadn't got the papers back from the loan company yet."

■■ The plaintiff's evidence is not to be construed from a single answer, but is to be considered and weighed by the facts and circumstances surrounding the entire transaction, and her statement that the defendant Eldon Mills said: "Well, I will just make it out for the whole thing when I make out the note and mortgage to cover the car and my home," clearly expresses her contention that a single note and a mortgage were to be executed to cover the debt created by the payment of the amounts due upon this defendant's automobile and home.

The defendants also contend that, even though the property to be pledged as security is definite and certain, still equity will not enforce specific performance by bringing into existence a mortgage thereon which

is not definite and certain in its terms. They point out that there is no evidence of the length of the term of the mortgage, the interest to be paid, or whether or not the same was to be paid in installments.

It must be kept in mind that by statute in this state a mortgage creates only a lien or incumbrance upon the property to secure the payment of the debt, and the mortgage is satisfied when the debt is discharged. We do not follow the common law where in a mortgagee held the fee to the real property subject to defeasance "by the doing of some act, such as the payment of money in a prescribed time and manner." *Stout v. Van Zante,* 109 Or 430, 435, 219 P 804, 220 P 414.

■■ Therefore, the terms of the debt to be satisfied, unless otherwise specified, fix the terms of a statutory mortgage. A note given is not the debt itself, but is evidence of the debt. *Security Inv. Co. v. Miller,* 189 Or 246, 218 P2d 966.

Had a note been executed by the defendant Eldon Mills to evidence the debt, it would have provided, under this evidence, only that it had been executed on a certain date, and that he unconditionally promised to pay a certain sum of money to the plaintiff. The question then is, would this have been sufficient as a promissory note?

■ We are not here concerned with the negotiability of the note used for illustration purposes; nevertheless, even such a note would not only be valid, but negotiable, for it is provided by our statute that when no time for payment is expressed in the note it is payable on demand. ORS 71.007. Interest is not a necessary requirement. ORS 71.002.

The second contention of the defendants is without

merit. They state, in effect, that, while plaintiff and defendant Eldon Mills were discussing their personal affairs and contemplating marriage, prior to the actual transfer of moneys and the statement of the defendant that he would give a mortgage, plaintiff offered to advance sufficient cash to pay the defendant's indebtedness, and nothing was said about him executing a mortgage; therefore, the sole conclusion that can be drawn is that the loan was made at that time, and the advance of the money later was made solely upon a promise to give a mortgage in the future, not enforcible, or at least the loan was made without reliance upon the promise to execute a valid mortgage.

The evidence of the plaintiff above set out shows clearly that at the time the money was advanced she was relying on Eldon Mills securing her advance by executing a mortgage upon his home.

■ Passing for the present the effect of the Statute of Frauds, an equitable mortgage arises whenever there is an agreement for the giving of a mortgage upon specific property supported by a consideration paid upon the faith of the agreement. *Hoevet v. Westwood Lbr. Co.*, 170 Or 423, 134 P2d 738; 59 CJS 50, Mortgages § 15.

The defendants' third proposition is based upon a question of fact. They contend that at all times under the evidence Eldon Mills was not the owner in fee of the real property, but only a trustee for the benefit of the defendants Jay Emmitt Mills and Wyona Mills, husband and wife. We are satisfied that the evidence fully justifies a finding that Eldon Mills was at all times the owner in fee simple of the property.

The serious question that is posed, however, is whether or not, because the agreement to execute the

mortgage is entirely oral, equity will specifically enforce the agreement.

ORS 41.580 provides:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, * * *:

* * * * *

"(5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein."

For the purposes of this opinion, we consider a mortgage upon real property as creating an "interest therein," although for other purposes a mortgage is not so considered until foreclosed. See *McLennan v. Holbrook*, 143 Or 458, 461, 23 P2d 137.

■ It is now well-established as a general principle of law in this state that to prevent the perpetration of a fraud the Statute of Frauds will not preclude a court of equity from enforcing an oral agreement of the parties lying within its prohibition. *Walker v. Mackey et al.*, 197 Or 197, 251 P2d 118, 253 P2d 280; *Young v. Neill et al.*, 190 Or 161, 220 P2d 89, 225 P2d 66.

■ The basis of equitable interference is that "Equity will not permit a party to retain an advantage thus gained upon the faith of a verbal agreement, while he repudiates its obligations under cover of a statute. In a word, it will not allow the statute to be used as a cover for fraud and bad faith." *Wagonblast v. Whitney*, 12 Or 83, 88, 6 P 399. "The statute of frauds was never designed to shield against the perpetration of a fraud." *Young v. Neill et al.*, supra, 166.

We stated in *Hayward v. Morrison et ux.*, 194 Or 335, 348, 241 P2d 888:

"The foundation of this doctrine is fraud; not necessarily an antecedent or positive fraud, but a fraud inhering in the consequence of this setting up the statute. It applies where to permit the defense would be inequitable and unconscionable. Young v. Neill et al., supra; Dunis v. Director et al., 121 Or 500, 507, 255 P 474; Riggs v. Adkins, 95 Or 414, 418, 187 P 303; Cantwell v. Barker, 62 Or 12, 124 P 264; Seymour v. Oelrichs, 156 Cal 782, 106 P 88, 134 Am St Rep 154; Walter v. Hoffman, 267 NY 365, 196 NE 291, 101 ALR 919, and note commencing at page 926; 37 CJS, Statute of Frauds, 753, § 247."

■ However, a court of equity will only act whenever it can be said there has been sufficient partial performance that to fail to require the other party to fulfill his portion of the agreement will result in unconscionable fraud. Thus, as in *Walker v. Mackey et al.*, supra, and *Young v. Neill et al.*, supra, sufficient partial performance is had in the lease or sale of real property in the taking of possession of the property, and making valuable improvements thereon, or taking possession with or without payment of the consideration is sufficient to remove the contract from the prohibition of the Statute of Frauds.

In the matter of agreeing to execute a mortgage upon specific real property, however, as pointed out previously, possession of the property is not, in this state, a right granted the mortgagee. His sole right is to a lien, which may be enforced to secure the payment of the debt, and from the enforcement of this right possession may arise only as an incident after enforcement.

The delivery of the money by the mortgagee to the mortgagor, if the full amount agreed upon, is full per-

formance of his portion of the agreement so far as the mortgage is concerned. Yet such performance has been held not to be sufficient to remove the bar of the statute. In the case of *Sleeth v. Sampson,* 237 NY 69, 73, 142 NE 355, Mr. Justice Cardozo, in speaking of the creation of an equitable mortgage, said:

> "The payment of money is not enough, unless followed by other acts, as, for example, possession or improvements (Russell v. Briggs, 165 N.Y. 500, 505; Williston, Contracts, § 494). We see no distinction in this respect between a payment for an absolute conveyance and a payment for a mortgage (Ex parte Hall, In re Whitting, 10 Ch. Div. 615; Bloomfield State Bank v. Miller, 55 Neb. 243, 255)."

Other courts and text writers have, however, taken an opposite view; that is, that the payment of the money is sufficient performance. *Schram v. Burt,* 111 F2d 557, and cases cited therein; 4 Pomeroy's Equity Jurisprudence (5th ed) 704, § 1237; Walsh on Mortgages, 42, § 8.

Richard R. Powell, professor of law at Columbia University, and reporter on property for the American Law Institute, in volume 3 of his work, Powell on Real Property § 448, at page 583, states the conflict of views thus:

> "An unperformed agreement to give a mortgage on identified land invites the help of equity. The parties having intended the creation of a security interest, equity decrees the specific lien, enforceable by the creditor as an equitable mortgage. The decree can take the form of a direction to the debtor to deliver a formal mortgage, or, in the alternative, to pay the debt due. When the agreement to give the mortgage is wholly oral, an additional difficulty is encountered. If the lender has paid over money in reliance upon a parol promise to give a security

interest in land, the question raised is whether the act of payment alone is a sufficient part performance to satisfy the Statute of Frauds. The weight of authority says that it is. New York has led the opposition, refusing specific performance when the fact of payment stood alone. Text writers have also divided upon the desirabilities of these two rules. The claim of security can come as an afterthought. It, perhaps, is useful to follow the lead set in the law of bankruptcy and to increase the difficulties of proof which must be surmounted by creditors greedy for security as an afterthought."

Therefore, it is clear that in equitable actions to enforce specific performance based upon part performance a defendant should be charged with the results of the acts done; that these acts must arise out of and be referable unequivocally to the oral contract, and must result in a situation that will create an injustice unless fully performed.

 Decisions of this court and other courts are valuable as guides in specific cases, but they do not limit or extend the general principles which surround these rules. Each case must depend upon the correct application of the rules to the facts as they are found to exist. In this manner only may the power of equitable dispensation be exercised and the policy of the statute saved. See *Burns v. McCormick,* 233 NY 230, 135 NE 273.

The facts of this case disclose that the home of the defendant Eldon Mills was incumbered with a mortgage; that the mortgage was paid with the money advanced by the plaintiff; that the plaintiff was led to believe this should be done to save Eldon Mills the burden of paying the interest upon the then existing mortgage so that these parties might, as partners, enter into a business or matrimonial venture; that sub-

sequent to the payment of the existing mortgage upon the real property, Eldon Mills transferred his affections to another; that after the commencement of this suit he deeded the real property to his brother and sister-in-law, the defendants Jay Emmitt Mills and Wyona Mills, husband and wife, and procured the transfer of the title to the real property from Jay Emmitt Mills and Wyona Mills to his friend of long standing, the defendant Gordon R. Andrus.

We do not deem it necessary to decide in this case whether or not the New York rule, or the apparent majority rule of partial performance by the payment of money only, is the more desirable, for in addition to the payment of money, there is the act of the defendant Eldon Mills in using the money in accordance with the agreement of the parties to pay the existing mortgage and relieve him of the payment of interest.

12. To permit the defendants to prevail in this cause in reliance upon the Statute of Frauds would be to tie the arms of equity and cause equity to lend its aid to the perpetration of an unconscionable fraud.

The decree of the trial court is affirmed.

Mr. Justice LATOURETTE did not participate in this opinion.

**ON REHEARING**

On Appellants' Petition for Rehearing

*Henry Bauer* and *Phillips, Coughlin, Buell & Phillips,* Portland, for the petition.

*Krause, Evans & Lindsay,* and *Jack L. Kennedy,* Portland, contra.

Before Warner, Chief Justice, and Rossman, Latourette and Perry, Justices.

PERRY, J.

Our original opinion affirmed the decree of the trial court. At the time this opinion was rendered we overlooked a letter from plaintiff's counsel stating that an error of computation had been made, and that the decree should have been in the amount of $7,006.06, with interest at the rate of 6% per annum from December 11, 1951, until paid, together with costs and disbursements in the sum of $86.84.

The appealing defendants have petitioned for a rehearing, stating that we overlooked, as pointed out in their briefs, that the sum of $850 included in the judgment as entered was loaned to the defendant Eldon Mills subsequent to his agreement to secure the pre-

vious advances of funds by a mortgage upon his property, and that there is no evidence in the record that this latter sum was to be thus secured.

We must again confess our oversight, for we have searched the record and it is devoid of any promise to secure this latter amount.

The decree of the trial court should be modified by reducing the money judgment secured to the sum of $6,156.06, together with interest, costs and disbursements as above set out.

Our former opinion is corrected as herein set out, and the decree of the trial court as thus modified is affirmed.

The petition for rehearing is denied.