Argued September 10, reversed November 5, 1979

PACK, et al,
*Respondents,*
*v.*
CUPPETT,
*Appellant.*

(No. 77-6015, CA 11984)

602 P2d 314

Clayton C. Patrick, Salem, argued the cause and filed the briefs for appellant.

Russell D. Bevans, Springfield, argued the cause for respondents. With him on the brief was Bevans & McCullen, Springfield.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Plaintiffs sued for specific performance of an earnest money agreement executed by the agent of defendant-seller. Defendant appeals from a decree ordering her specifically to perform the agreement or in the alternative to pay damages. She challenges certain elements of the decree, including the finding that the agent was properly authorized to conclude a contract for sale of the land. That issue is dispositive.[1]

In August, 1977, one of the plaintiffs telephoned defendant at her home in Virginia about the possible sale of eight and one-half acres of land she owned in Springfield, Oregon. On August 23, 1977, an attorney in Virginia (Garnett), retained by defendant, contacted an attorney (Harold) in Springfield, Oregon, and asked him to represent defendant as a mutual client with respect to the real property. Garnett indicated that time was of the essence. In late August and early September plaintiffs twice met with Harold to discuss terms. On August 30, 1977, defendant had signed a written authorization prepared by Garnett and directed to Harold. That authorization stated in full:

> "This will authorize you to accept the sum of $2,500 or such other greater amount as you think advisable as earnest money to be applied to the purchase price of the property previously discussed between you and my attorney, Mr. Garnett."

Harold testified that he received this letter on September 6.

On September 14, defendant wrote Garnett and complained about the time delay involved in the transaction. Defendant testified that she called one of the

[1] In her reply brief defendant raised the jurisdictional question whether the cause was properly pursued in equity because plaintiffs knew prior to the commencement of the suit that defendant had transferred her interest in the property. Assuming there was an initial defect in equity jurisdiction, defendant waived it by her failure to raise a timely objection in the trial court by demurrer, as in *Fleming v. Wineberg*, 253 Or 472, 481, 455 P2d 600 (1969), or by a motion to transfer the case to the law side of the court, as in *Olson v. Roop*, 255 Or 368, 370, 467 P2d 437 (1970). *See* ORS 16.460(3).

[89]

plaintiffs on September 19 and told him that she wanted a trust deed; that plaintiff testified he could only recall a phone call in which the form of security was discussed, but not that defendant asked for a trust deed. On September 20, defendant wrote to Garnett expressing dissatisfaction with the price. Also on September 20, plaintiffs again met with Harold, signed the earnest money receipt and paid $2,500. The document specified that a land sale contract was to follow and included a section entitled "Agreement to Sell," which Harold signed for defendant.[2] On September 21, Harold sent a copy of the earnest money receipt to Garnett. On the same day, in Virginia, defendant signed a deed to convey the property to her daughter, and she mailed it to her daughter on September 30. The deed was not recorded until December 19, 1977.

Defendant testified she received a phone call on September 29 from Garnett's secretary about a "land sale contract" that needed her signature, and she replied that she would not consider it. On October 7, defendant wrote to Garnett revoking the written authorization "for their [*i.e.,* plaintiffs'] offer of the earnest money of $2,500," citing as her reason that plaintiffs were using delaying tactics to put her in an untenable financial position concerning property taxes. On October 10, Harold sent the Virginia attorney drafts of a land sale contract, escrow instructions and a warranty deed for his approval and defendant's signature. Those documents were never signed by defendant.

On October 14, plaintiff Pack asked Harold to extend the time for closing from October 20 to November 20. Harold replied that he would have to seek authorization from defendant through her attorney, and that he would relay the proposal to Garnett. On October 19, defendant saw the earnest

---

[2] The "Agreement to Sell" portion of the account provided:

"I hereby approve and accept the sale of above described property and the price and conditions as set forth in above contract and agree to furnish evidence of title as above provided; also the said deed when stated."

money receipt for the first time, in Garnett's office. On the same day, when Pack called her directly to ask for extension of the closing time, defendant told him that she had transferred title and that there would be no closing on October 20. Defendant then called Garnett and said she would not sign a land sale contract because she wanted a deed of trust. Despite these things, from about October 20 to November 7, defendant was in contact with her Virginia attorney concerning negotiations for the sale of the property to plaintiffs. At trial defendant testified that she thought she could still pass title at that time through her daughter, who would act as defendant's agent. On November 22, Garnett withdrew from the case, and on December 8 defendant relieved Harold from the case. Plaintiffs had already filed the instant lawsuit on October 27 to enforce the earnest money agreement.

We conclude that defendant's Oregon agent exceeded the scope of his authority. The written authorization clearly did authorize the *receipt* of earnest money at least. Harold testified that he did not at the time believe he had the authority to execute a land sale contract, although he believed he was authorized to complete the standard Stevens-Ness earnest money receipt form including all of its terms and conditions. In so doing, he signed his name as agent of the defendant to the "Agreement to Sell," an act which, if authorized, would have had the same effect as a contract of sale by binding defendant to the sale of her property on the terms stated. Harold understood that in other respects his authority was limited; *i.e.,* he recognized that he would have to have authorization from Garnett and defendant to extend the time for closing as well as their approval of the closing documents.

The authority of an agent to sell real property must be in writing. ORS 41.580(6).[3] Such writings are nar-

[3] ORS 41.580(6):

"In the following cases the agreement is void unless it, or some note

rowly construed. In *Marshall v. Strauss,* 160 Or 265, 273, 84 P2d 502 (1938), a letter giving the agent himself an option to purchase the property was held not to constitute authority to sell, but at most only authority to find a purchaser. In *Capps v. Mines Service,* 175 Or 248, 152 P2d 414 (1944), the writing authorizing sale of real property was construed not to allow an exchange for stock, for "one would suppose that had that power been intended to be conferred it would have been plainly expressed." 175 Or at 253. In this case the authorization on August 30 plainly allowed acceptance of earnest money when the price was agreed upon. But it does not appear to have authorized Harold to bind the seller to terms and conditions.

That the agent was an attorney does not alter the scope of the authorization. Defendant testified that she had not authorized Garnett to hire Harold as her attorney. Even had she done so, in *Hage v. Harney,* 210 Or 652, 656-57, 313 P2d 448 (1957), the Supreme Court said:

> "[T]he relationship of attorney and client does not in and of itself create authority to buy, sell or make any contracts concerning real property unless expressly conferred by the client upon the attorney and to be effective must be in writing."

Other circumstances indicate that defendant did not intend her Oregon agent to enter into any contract for the sale of her land without her explicit authorization. In addition to defendant's direct testimony that she never intended that Harold be authorized to sell the land, her actions revealed a continuing concern that

---

or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"* * * * *

"(6) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing."

the negotiations result in terms fully according with her wishes. The intent of the principal is the controlling factor. *Brown v. Laird*, 134 Or 150, 157, 291 P 352 (1930).

In view of the foregoing, there was no enforceable contract on which to base a suit for specific performance or an action for damages.

Reversed.