**ROADWAY EXPRESS, INC., a Delaware corporation, Plaintiff–Appellant,**

v.

**Wilfred E. JOSSY, William O. Jossy and Roberta Tichenor, Defendants–Appellees.**

No. 87–3522.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1988.

Decided Aug. 4, 1988.

Barbee Lyon, Portland, Or., for plaintiff-appellant.

Gregory A. Chaimov, Portland, Or., for defendants-appellees.

Before HALL and O'SCANNLAIN, Circuit Judges, and KELLER,* District Judge.

KELLER, District Judge:

Plaintiff Roadway Express, Inc. (Roadway) appeals the denial by the district court of its request for an order of specific performance of the contract Roadway had with defendants Wilfred E. Jossy, William O. Jossy, and Roberta Tichenor (collectively "the Jossys"). The district court ruled that the Oregon Statute of Frauds, Or.Rev.Stat. § 41.580(6) (1987), precluded enforcement of the agreement. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1986, Roadway, a trucking company, decided to acquire a truck terminal in the area north of Portland, Oregon. The Jossys owned such a terminal and the two sides began to negotiate Roadway's possible purchase of the terminal. The Jossys engaged the law firm of Greene and Markley (G & M) to represent their interests during the negotiations.

On August 7, 1986, G & M, on behalf of the Jossys, made a formal offer to Roadway to sell the terminal for $2 million. Shortly thereafter, and before Roadway could respond to the offer, the Jossys had G & M revoke the offer because they had heard of another potential purchaser.

Four days later, on August 11, Roadway proposed to purchase the terminal and increased the sale price to $2.2 million. The

---

* The Honorable William D. Keller, United States District Judge for the Central District of California, sitting by designation.

Jossys authorized G & M to accept Roadway's offer. The district court found that the parties thereafter entered into an oral agreement for the sale of the truck terminal. In fact, one of the defendants' attorneys stated it "looks like we have a deal." The court also concluded that this agreement was later properly memorialized.

Pursuant to the agreement, Roadway immediately took various actions. First, it delivered $100,000 earnest money to G & M. Second, Roadway obtained insurance for the property because the agreement expressly provided that Roadway was to bear the risk of loss upon acceptance. Finally, Roadway hired a security guard for the terminal, though it had not taken formal possession of the property.

During the period in which the negotiations had taken place, the Jossys had received overtures from a competitor of Roadway, Consolidated Freightways (Consolidated), to purchase the property. After the agreement between the Jossys and Roadway had been completed, a representative of Consolidated contacted G & M in an attempt to acquire the terminal. When Consolidated's representative was informed that the Jossys had already agreed to sell the terminal to Roadway, he pointed out that, contrary to one provision of the Oregon statute of frauds, the Jossys had not given written authorization to G & M to sell the property.

The Jossys then sought to have Roadway and Consolidated enter into a bidding contest for the property. Roadway refused. On August 17, the Jossys signed a contract to sell the property to Consolidated for $2.5 million. As part of the agreement, Consolidated promised to defend the Jossys against any action instituted against them by Roadway and to guarantee the Jossys' profit even if Roadway were to prevail in that litigation.

On August 18, another attorney representing the Jossys informed Roadway of the agreement with Consolidated. He also returned the $100,000 earnest money, advised Roadway to cancel the insurance it had obtained, and ordered Roadway to stay off the property.

In an expedited trial before a federal magistrate, Roadway's request for specific performance of the written agreement was denied for failure to comply with the statute of frauds. The magistrate concluded that G & M's authority to convey the real property was not in writing as required by the statute. The magistrate also rejected Roadway's argument that assuming the risk of loss, obtaining a guard, and delivering $100,000 earnest money was sufficient part performance to take the agreement out of the statute of frauds.

## DISCUSSION

### I. Standard of Review

■ This Court reviews the application of a rule of law to established facts *de novo*. *United States v. McConney*, 728 F.2d 1195, 1204 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ A district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 487 (9th Cir. 1985). Under the clearly erroneous standard, we must accept the lower court's findings of fact unless we are left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

### II. The Statute of Frauds and Part Performance

Under Oregon law, an agent's authority to convey real property on behalf of his or her principal must be in writing. *Marshall v. Strauss*, 160 Or. 265, 274, 84 P.2d 502, 506 (1938); *Pack v. Cuppett*, 43 Or.App. 87, 91–92, 602 P.2d 314, 316 (1979). The applicable statute provides, in pertinent part:

In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence,

therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

. . . .

(6) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing.

Or.Rev.Stat. § 41.580 (1987). This requirement must be satisfied even where the agent is the principal's attorney. *Hage v. Harvey*, 210 Or. 652, 656–57, 313 P.2d 448, 450–51 (1957).

Roadway acknowledges that its agreement with the Jossys failed to comply with section 41.580(6). However, it asserts that the acts it performed pursuant to the agreement constitute sufficient part performance to take the agreement out of the statute of frauds.[1]

The Oregon Supreme Court has stated the elements of the part performance doctrine which, if present, will take an agreement out of the statute of frauds:

[T]he terms of an oral agreement will be enforced (1) if there is conduct corroborating and unequivocally referable to the oral agreement sufficient to satisfy the policy of the statute designed to minimize perjured claims and the opportunities for fraud, and (2) if there are equitable grounds for enforcing the contract whether those grounds are found in facts establishing the basis for a true estoppel or in facts justifying the avoidance of unjust enrichment or relief from fraud.

*Luckey v. Deatsman*, 217 Or. 628, 633, 343 P.2d 723, 725 (1959) (citation omitted). Speaking to the doctrine's application in the land purchase context, the Oregon Supreme Court has also stated that

[w]here one party in addition to taking possession of the premises and paying on the purchase price performs other acts pursuant to the terms of an oral contract of sale and directly referable thereto, such as materially changing his position to his disadvantage, making substantial improvements or repairs to the premises, or otherwise doing something which he would not have done but for the agreement and which would result in substantial injury to himself if the other party were permitted to hide behind the statute of frauds and disavow the same, and when the other party has received and enjoyed the benefits of the oral agreement, equity will step in and compel specific performance, the other party being estopped to set up the statute as a defense.

The foundation of this doctrine is fraud; not necessarily an antecedent or positive fraud, but a fraud inhering in the consequence of this setting up the statute. It applies where to permit the defense would be inequitable and unconscionable.

*Hayward v. Morrison*, 194 Or. 335, 348, 241 P.2d 888, 893–94 (1952).

■ We agree with the district court that Roadway's most significant acts—assuming the risk of loss and providing insurance for the terminal—do not involve a "substantial" change of position. Risk of loss or other unrealized potentialities simply do not rise to the level of material detriment required by the doctrine. There was no evidence that the insurance expenditure and/or risk of loss somehow hindered or otherwise influenced other actions contemplated by Roadway. For example, it was not contended that Roadway's risk rating was increased or that Roadway was prevented from insuring other property to its detriment.

---

1. An agreement may also fall without the statute of frauds if the elements of equitable estoppel have been met. Although Roadway alleged equitable estoppel in its complaint and briefed the issue in the district court, it failed to raise the issue at trial or to complain about the magistrate's failure to make any findings of fact and conclusions of law regarding the issue. As a result, Roadway has waived this argument and

we decline to address it on appeal. *Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge*, 827 F.2d 1324, 1328–29 (9th Cir.1987); *Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1115–16 (9th Cir.1987); *Robert's Waikiki U–Drive v. Budget Rent–A–Car Systems*, 732 F.2d 1403, 1408–09 (9th Cir.1984).

The case law as it has developed in Oregon makes abundantly clear that considerably more is required in order to invoke the doctrine of partial performance. *See, e.g., Royer v. Gailey,* 252 Or. 369, 373–74, 449 P.2d 853, 855 (1969) (easement created where plaintiff cleared a ravine, excavated area, installed collection tiles, backfilled excavation with gravel, and installed catch basin); *Luckey,* 217 Or. at 634–35, 343 P.2d at 726 (easement created where, pursuant to oral agreement, plaintiff built, at his own expense, two concrete reservoirs, contributed to cost of adjoining pipe, paid sum of money to defendant, and agreed to place a portion of pipe over his land; in addition, benefit accrued to defendant by use of water system and monetary payments); *Hayward,* 194 Or. at 349–50, 241 P.2d at 894 (1952) (upholding agreement where plaintiff took possession of premises, made improvements thereon, and defendant received and accepted purchase price). Summarizing the requirements of partial performance, the Oregon Supreme Court has stated that

> a court of equity will *only* act whenever it can be said there has been sufficient partial performance that to fail to require the other party to fulfill his portion of the agreement will result in unconscionable fraud.... [S]ufficient partial performance is had in the lease or sale of real property, in the taking of possession of the property, and making valuable improvements thereon, or taking possession with or without payment of the consideration is sufficient to remove the contract from the prohibition of the Statute of Frauds.

*Smith v. Mills,* 207 Or. 546, 556, 296 P.2d 481, 485, *modified,* 207 Or. 559, 298 P.2d 185 (1956) (emphasis added).

Roadway seeks to sidestep the absence of material detriment by arguing that its acts fully establish that its claim is neither perjured nor fraudulent. While it is true that the statute of frauds is partially concerned with the evidentiary value of the acts undertaken by the plaintiff, it is simply incorrect, as the foregoing cases make clear, to assert that the degree of effort or expense is not the primary measure of part performance. *See* E. Farnsworth, *Contracts* § 6.9, at 422 (1982) ("[C]ourts have required a measure of reliance that often seems unrelated to any evidentiary function."). Indeed, a defendant "may admit a verbal agreement, and yet assert its invalidity." *Taggart v. Hunter,* 78 Or. 151, 156, 152 P. 871, 872 (1915) (quoting *Taylor v. Allen,* 40 Minn. 433, 434, 42 N.W. 292 (1889)).[2]

Roadway cites language in *Stevens v. Good Samaritan Hospital,* 264 Or. 200, 203, 504 P.2d 749, 750 (1972), for the proposition that the statute of frauds is not to be interpreted literally. This contention reflects a misunderstanding of the part performance doctrine. The non-literal interpretation philosophy regarding the statute of frauds is what spawned the part performance doctrine in the first place, inasmuch as the statute itself makes no reference to such an extension. In fact, in *Stevens* itself, the Court noted that "[a]n example" of this non-literal application "is the frequent use of the doctrine of part performance." *Id.* Roadway fails to distinguish between a liberal interpretation of the statute of frauds (which is accepted through utilization of the part performance doctrine) and a further liberal application of the result of that liberal interpretation— *i.e.,* the doctrine of part performance itself (which is not).[3]

---

**2.** Similarly, Roadway's other contentions of part performance—the delivery of $100,000 earnest money and the posting of a guard at the site—do not constitute sufficient performance. Roadway does not provide any justification that these acts involved a substantial change of position or other material detriment. Roadway's check for $100,000 was tendered on Friday and returned uncashed on the following Monday. In addition, Roadway presented no evidence that it actually incurred any expense for the posting of a guard.

**3.** Because we conclude that Roadway's actions did not involve a substantial change in position, we need not determine whether the other requisite elements of part performance—that the acts be referable to the oral agreement and the existence of equitable grounds for enforcing the agreement—have been met.

Long ago, one prominent scholar in the area of contract law observed, with respect to the statute of frauds:

> No doubt the fact that a contract was made by word of mouth only is never a reason that justifies its wilful repudiation in the eyes of honorable men. With them a word is as good as a bond. But in the cases now under discussion the legislature has said that an oral word is not quite as good as a signed writing; and in order to attain the purposes for which the statute was passed, it is necessary to permit repudiation without the usual legal penalty....

2 A. Corbin, *Corbin on Contracts* § 426, at 466 (1950).

This case epitomizes the dangers and inherent unfairness when legal principles must be applied mechanically. What was intended to be a shield against fraudulent claims of conveyance has been turned into a sword which can then be used to shred an otherwise binding agreement, recognized as such by all parties involved. Nevertheless, we are constrained to conclude that the legitimate agreement entered into by the parties is unenforceable, for "a party is bound at its peril to ascertain the extent of an agent's authority." *Coleman v. Parry Center for Children,* 43 Or.App. 775, 779, 604 P.2d 424, 426 (1979).

### III. Attorneys' Fees

■ Despite their insistence that the agreement is unenforceable, the Jossys boldly ask to be awarded their attorneys' fees as provided for in the agreement. Defendants "may not avoid the contract and, at the same time, claim the benefit of the provision for attorney fees." *Bodenhamer v. Patterson,* 278 Or. 367, 378, 563 P.2d 1212, 1215 (1977). *See also Pickinpaugh v. Morton,* 268 Or. 9, 15–18, 519 P.2d 91, 94–95 (1974); *John Deere Co. v. Epstein,* 91 Or.App. 195, 202–03, 755 P.2d 711, 714–15 (1988). The request for attorneys' fees is therefore denied.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

## CONCLUSION

Accordingly, for the reasons stated, the district court's ruling is AFFIRMED.